ALFRED H. CATTERALL, SR., AND DOROTHY CATTERALL, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 5817–74, 6457–74, 6488–74. Filed June 22, 1977.

---

[1] Cases of the following petitioners are consolidated herewith: Ray P. McBride and Edna K. McBride, docket No. 6457–74; and Walter F. Vorbleski and Florence Vorbleski, docket No. 6488–74.

*David E. Wasserstrom* and *Michael A. Bloom,* for the petitioners.

*Paul J. Sude,* for the respondent.

OPINION

GOFFE, *Judge:* The Commissioner determined deficiencies in petitioners' Federal income taxes for the taxable year 1971 as follows:

| Docket No. | Petitioners | Deficiency |
|---|---|---|
| 5817–74 | Alfred H. and Dorothy Catterall, Sr. .... | $28,989.97 |
| 6457–74 | Ray P. and Edna K. McBride ................. | 31,917.74 |
| 6488–74 | Walter F. and Florence Vorbleski ......... | 29,228.56 |

The cases were consolidated for purposes of trial, briefing, and opinion. Concessions having been made, the sole issue for decision is whether the imputed interest provisions of section 483,[2] I.R.C. 1954, apply to the deferred receipt of stock, the receipt of which was contingent under the terms of an agreement for exchange qualifying as a reorganization under the provisions of sections 354(a)(1) and 368(a)(1)(B).

The consolidated cases were submitted under Rule 122, Tax Court Rules of Practice and Procedure. All of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated by this reference. Only the facts necessary for an understanding of our opinion will be summarized below.

Petitioners Alfred H. Catterall, Sr., and Dorothy Catterall, husband and wife, resided in Conyngham, Pa., at the time they filed their petition in this proceeding. Petitioners Ray P.

---

[2] All section references are to the Internal Revenue Code of 1954, as amended.

and Edna K. McBride, husband and wife, and Walter F. and Florence Vorbleski, husband and wife, resided in Berwick, Pa., at the time they filed their petitions herein. Petitioners filed their joint Federal income tax returns with the District Director of Internal Revenue, Philadelphia, Pa. For convenience, the husbands will be collectively referred to as petitioners.

Prior to April 15, 1968, Berwick Forge & Fabricating Corp., a Pennsylvania corporation (hereinafter referred to as Berwick), had outstanding common stock consisting of 3,200 shares, par value $25 per share, owned equally by each of the petitioners herein. On or about April 15, 1968, petitioners entered into an acquisition agreement and plan of reorganization (hereinafter referred to as the agreement) with Whittaker Corp. (hereinafter referred to as Whittaker), a California corporation having its principal office in Los Angeles, Calif. The agreement provided for the acquisition of all of the stock of Berwick owned by petitioners solely in exchange for voting stock of Whittaker.

Pursuant to the terms of the agreement, petitioners were to receive and did receive 115,000 shares of Whittaker common stock, par value $1 per share, divided equally among them, in exchange for their transfer to Whittaker of all of their Berwick stock. The Whittaker common stock had a fair market value of $78.25 per share on April 15, 1968.

Under the terms of the agreement Whittaker agreed to reserve for possible future delivery to petitioners 113,300 shares of its common stock which for convenience were referred to in the agreement as "reserve shares." The reserve shares were divided into two equal accounts, reserve A and reserve B, each consisting of 56,650 shares, to be delivered to petitioners based upon the ascertainment of future profits of Berwick and the market value as of October 31, 1970, of all shares of Whittaker issued pursuant to the agreement. The reserve A shares were to be issued to petitioners in various amounts over the first three "adjustment" years following the acquisition. The number of shares to be issued was to be computed pursuant to a formula contained in the agreement which was based upon the profits of Berwick for its taxable and "adjustment" years ended October 31, 1968, October 31, 1969, and October 31, 1970. The agreement further provided

that in the event Whittaker was required to deliver at least 100 shares of the reserve A shares to petitioners, and if the total market value of all the Whittaker common stock received by them at the closing and out of the future reserve A shares issued with respect to the "adjustment" years was less than 4½ times the average annual Berwick profits for the "adjustment" years as of October 31, 1970, Whittaker was obligated to deliver such number of reserve B shares so as to make the total market value of all shares received by petitioners equal to 4½ times the average annual Berwick profits for the 3 "adjustment" years. No provision was made for the payment of interest on the reserve shares.

In 1971 the net profits of Berwick and the market value of Whittaker stock were such as to require the delivery of the reserve A and B shares to petitioners. On February 17, 1971, petitioners each received 48,625 shares of common stock of Whittaker representing the reserve A and B shares to which each was entitled under the agreement, such shares having been adjusted and increased by virtue of stock dividends and stock splits of Whittaker. The additional shares of Whittaker so delivered had a value of $9.625 per share on February 17, 1971. Under the agreement the common shares of Whittaker received by petitioners were subject to substantial restrictions on transferability.

The exchanges of stock between petitioners and Whittaker, including the reserve shares delivered on February 17, 1971, qualified as a tax-free reorganization under sections 354(a)(1)[3] and 368(a)(1)(B).[4]

---

[3] SEC. 354. EXCHANGES OF STOCK AND SECURITIES IN CERTAIN REORGANIZATIONS.

(a) GENERAL RULE.—

(1) IN GENERAL.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

[4] SEC. 368. DEFINITIONS RELATING TO CORPORATE REORGANIZATIONS.

(a) REORGANIZATION.—

(1) IN GENERAL.—For purposes of parts I and II and this part, the term "reorganization" means—

* * *

(B) the acquisition by one corporation, in exchange solely for all or a part of its voting stock (or in exchange solely for all or a part of the voting stock of a corporation which is in control of the acquiring corporation), of stock of another corporation if, immediately after the acquisition, the acquiring corporation has control of such other corporation (whether or not such acquiring corporation had control immediately before the acquisition);

The Commissioner, in his statutory notice of deficiency, determined that petitioners received interest income pursuant to section 483 on the receipt of the additional Whittaker shares in 1971.

Section 483[5] was added to the Internal Revenue Code in 1964 to correct a practice whereby a seller of property on the

---

[5] SEC. 483. INTEREST ON CERTAIN DEFERRED PAYMENTS.

(a) AMOUNT CONSTITUTING INTEREST.—For purposes of this title, in the case of any contract for the sale or exchange of property there shall be treated as interest that part of a payment to which this section applies which bears the same ratio to the amount of such payment as the total unstated interest under such contract bears to the total of the payments to which this section applies which are due under such contract.

(b) TOTAL UNSTATED INTEREST.—For purposes of this section, the term "total unstated interest" means, with respect to a contract for the sale or exchange of property, an amount equal to the excess of—

(1) the sum of the payments to which this section applies which are due under the contract, over

(2) the sum of the present values of such payments and the present values of any interest payments due under the contract.

For purposes of paragraph (2), the present value of a payment shall be determined, as of the date of the sale or exchange, by discounting such payment at the rate, and in the manner, provided in regulations prescribed by the Secretary or his delegate. Such regulations shall provide for discounting on the basis of 6-month brackets and shall provide that the present value of any interest payment due not more than 6 months after the date of the sale or exchange is an amount equal to 100 percent of such payment.

(c) PAYMENTS TO WHICH SECTION APPLIES.—

(1) IN GENERAL.—Except as provided in subsection (f), this section shall apply to any payment on account of the sale or exchange of property which constitutes part or all of the sales price and which is due more than 6 months after the date of such sale or exchange under a contract—

(A) under which some or all of the payments are due more than one year after the date of such sale or exchange, and

(B) under which, using a rate provided by regulations prescribed by the Secretary or his delegate for purposes of this subparagraph, there is total unstated interest.

Any rate prescribed for determining whether there is total unstated interest for purposes of subparagraph (B) shall be at least one percentage point lower than the rate prescribed for purposes of subsection (b)(2).

(2) TREATMENT OF EVIDENCE OF INDEBTEDNESS.—For purposes of this section, an evidence of indebtedness of the purchaser given in consideration for the sale or exchange of property shall not be considered a payment, and any payment due under such evidence of indebtedness shall be treated as due under the contract for the sale or exchange.

(d) PAYMENTS THAT ARE INDEFINITE AS TO TIME, LIABILITY, OR AMOUNT.—In the case of a contract for the sale or exchange of property under which the liability for, or the amount or due date of, any portion of a payment cannot be determined at the time of the sale or exchange, this section shall be separately applied to such portion as if it (and any amount of interest attributable to such portion) were the only payments due under the contract; and such determinations of liability, amount, and due date shall be made at the time payment of such portion is made.

(e) CHANGE IN TERMS OF CONTRACT.—If the liability for, or the amount or due date of, any payment (including interest) under a contract for the sale or exchange of property is changed, the "total unstated interest" under the contract shall be recomputed and allocated (with adjustment for prior interest (including unstated

installment basis was able to convert what would otherwise constitute interest income into capital gain by inflating the purchase price and not providing for the payment of interest on the deferred payments. H.Rept. 749, 88th Cong., 1st Sess. (1963), 1964-1 C.B. (Part 2) 128. In general, section 483 requires that in the case of a contract for the sale or exchange of property under which deferred payments are due more than 1 year from the date of such sale or exchange and which provides for either no interest or interest payments at a rate below that specified in the Treasury regulations, a portion of each payment received more than 6 months after the date of sale or exchange be treated as interest.

Petitioners contend that the imputed interest provisions of section 483 are not applicable to the receipt of the Whittaker shares in 1971 for the following reasons: (1) The delivery of the shares did not constitute a "payment" within the meaning of section 483; (2) the specific provisions of the reorganization sections take precedence over the general provisions of section 483; and (3) Congress did not intend to change the longstanding pattern of tax treatment of "B" reorganizations by the passage of section 483. In so contending, petitioners request that we reconsider our decision in *Solomon v. Commissioner*, 67 T.C. 379 (1976), in which we held that the receipt of shares of the acquiring corporation after the initial exchange in a nontaxable "B" reorganization is subject to the imputed interest provisions of section 483.

---

interest) payments) under regulations prescribed by the Secretary or his delegate.

(f) EXCEPTIONS AND LIMITATIONS.—

(1) SALES PRICE OF $3,000 OR LESS.—This section shall not apply to any payment on account of the sale or exchange of property if it can be determined at the time of such sale or exchange that the sales price cannot exceed $3,000.

(2) CARRYING CHARGES.—In the case of the purchaser, the tax treatment of amounts paid on account of the sale or exchange of property shall be made without regard to this section if any such amounts are treated under section 163(b) as if they included interest.

(3) TREATMENT OF SELLER.—In the case of the seller, the tax treatment of any amounts received on account of the sale or exchange of property shall be made without regard to this section if no part of any gain on such sale or exchange would be considered as gain from the sale or exchange of a capital asset or property described in section 1231.

(4) SALES OR EXCHANGES OF PATENTS.—This section shall not apply to any payments made pursuant to a transfer described in section 1235(a) (relating to sale or exchange of patents).

(5) ANNUITIES.—This section shall not apply to any amount the liability for which depends in whole or in part on the life expectancy of one or more individuals and which constitutes an amount received as an annuity to which section 72 applies.

At the outset, we note that although petitioners do not specifically challenge the validity of section 1.483–2(b)(3), Income Tax Regs., which provides that section 483 applies to deferred payments of stock in nontaxable reorganizations, their position is tantamount to contending that the above paragraph of the regulations is invalid. It is well settled that the Treasury regulations constitute "contemporaneous constructions by those charged with the administration of" the tax laws and "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes." *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501 (1948); *Bingler v. Johnson*, 394 U.S. 741, 749–750 (1969).

Petitioners first contend that the delivery of the shares in 1971 did not constitute a "payment" within the meaning of section 483. Petitioners' contention is based primarily upon the fact that the contractual rights to additional shares constitute "stock" within the meaning of section 354(a)(1), not "other property" under section 356(a)(1), *Carlberg v. United States*, 281 F.2d 507 (8th Cir. 1960), and that the delivery of the additional shares is entitled to the same treatment under the reorganization provisions as the stock initially received. However, the classification of the contractual rights and the tax treatment of the receipt of the additional shares under the reorganization provisions does not prevent the receipt of the additional shares from constituting a "payment" for purposes of section 483. "The focus of the reorganization provisions is upon *what* ultimately will be issued in exchange for the certificates of contingent interest, whereas the focus of the imputed interest provisions is upon *when* that ultimate issuance occurs." *Jeffers v. United States*, 556 F.2d 986 (Ct. Cl. 1977). The contractual rights to additional shares were not payments under section 483, but were in the nature of evidences of indebtedness contemplated by section 483(c)(2). The payments due under the terms of such evidences of indebtedness come within the ambit of section 483. Therefore, we conclude that the delivery of the additional shares in 1971 constituted a "payment" within the meaning of section 483.[6]

---

[6] The dissenting opinion in *Jeffers* stated that the opinion of the trial judge in *Solomon* appeared to be contrary to the decision of this Court in *Hamrick v. Commissioner*, 43 T.C. 21 (1964), as well as contrary to the decision of the Eighth Circuit in *Carlberg*. Our opinion in *Solomon* is not inconsistent with *Hamrick* or

*Solomon v. Commissioner, supra; Jeffers v. United States, supra.*

Petitioners also contend that the specific provisions of the reorganization sections of the Code take precedence over the general provisions of section 483 under the well-established rule of statutory construction that "a specific statute controls over a general one without regard to priority of enactment." *Bulova Watch Co. v. United States*, 365 U.S. 753, 758 (1961). Petitioners point to *Fox v. United States*, 510 F.2d 1330 (3d Cir. 1975), to illustrate the application of this rule of construction in the context of section 483. In *Fox* the taxpayer-husband contended that the payments to his former wife under an agreement providing for the payment of a lump sum over a period of 9½ years were subject to the imputed interest provision of section 483, thus entitling him to a deduction for interest expense. The Third Circuit concluded that the tax consequences of divorce-related payments are specifically controlled by sections 71 and 215 and not subject to section 483. *Fox* is clearly distinguishable from the facts of the instant case. Unlike sections 71 and 215 which are broadly couched in terms of the *gross income* of the wife, section 354 merely provides that no *gain* is recognized in the case of certain reorganizations described in section 368. Gain, as computed under section 1001(a), is merely one category of gross income described in section 61. Interest, the type of income with which we are concerned, is separately listed in section 61(a)(4). Although gain on the exchange of property is generally the only type of income realized in a reorganization in which no "boot" is received, the language of the reorganization sections does not specifically prohibit the recognition of other types of income. Therefore, no conflict exists between

---

*Carlberg* because those cases merely dealt with whether contractual rights to additional shares constitute "stock" or "other property" for purposes of the "boot" provisions of sec. 356(a)(1). Possibly the statement is based upon the dissent's mistaken belief that the additional shares received by the taxpayers in these cases were "owned" from the date of the initial exchange. Moreover, our decision in *Solomon* is, like *Hamrick*, a division opinion and not merely the opinion of the trial judge. Sec. 7460(b) provides that "the report [opinion] of the division shall become the report [opinion] of the Tax Court within 30 days after such report [opinion] by the division, unless within such period the chief judge has directed that such report [opinion] shall be reviewed by the Tax Court." An opinion of one division of the Court under the provisions of the Internal Revenue Code quoted above is an opinion of the Tax Court and, although not reviewed by the full Court, it represents the opinion of the Tax Court.

sections 483 and 354 and thus there is no basis for the application of the above-mentioned rule of statutory construction as in *Fox*.[7]

Petitioners' final contention is that our conclusion in *Solomon v. Commissioner*, 67 T.C. 379 (1976), that Congress intended to subject *any* deferred payment received in exchange for property to the provisions of section 483 unless excepted by subsection (f) is erroneous. In support of their contention, petitioners argue that when Congress intends for a newly adopted section to take precedence over other Code sections, it enacts a specific provision to that effect. For instance, when it enacted section 1250, which was in the same revenue bill as section 483, subsection (i) was included which provided as follows: "This section shall apply notwithstanding any other provision of this subtitle." We are satisfied that our conclusion in *Solomon* regarding the intent of Congress is correct for a number of reasons. First, as previously mentioned, there is no conflict whatsoever between section 483 and the reorganization provisions insomuch as the latter only excepts gain or loss from recognition. No mention is made of other types of income. Thus, there is no basis for the application of any drafting rule such as relied upon by petitioners. Second, under the maxim expressio unius est exclusio alterius, if a statute specifies certain exceptions to a general rule, an intention to exclude any further exceptions may be inferred. Third, it appears from the legislative history of section 483(f)(3) that nonrecognition exchanges were specifically considered in drafting the exceptions to the statute.[8] Finally, the Court of Claims in *Jeffers v. United*

---

[7] *Fox* is distinguishable for a second reason. The payments in *Fox*, if taxable, would have been ordinary income to the wife, whom the Third Circuit regarded as the "seller." In view of the fact that the payments could not have resulted in capital gain to her, they were excepted from sec. 483 by sec. 483(f)(3). In the instant case any realized gain, if recognized, would have been capital gain. *Jeffers v. United States*, 556 F.2d 986 (Ct. Cl. 1977).

[8] *Treatment of seller*

Paragraph (3) of section 483(f) excepts, in the case of the seller, amounts received on account of the sale or exchange of property from the tax treatment provided under section 483, if no part of any gain on such sale or exchange would be considered as gain from the sale or exchange of a capital asset or property described in section 1231 of the code. The determination of whether this exception applies is made without regard to whether, in fact, the sale or exchange results in a gain or *whether the gain (if any) would be recognized,* or whether section 1245 or section 1250 of the code applies to some or all of the gain (if any). [H. Rept. 749, 88th Cong., 1st Sess. A87 (1963), 1964-1 C.B. (Part 2) 335. Emphasis added.]

*States, supra* at 993, recently concluded that "the language Congress used for section 483 implies that [it] intended the section to have far-reaching consequences on the entire Internal Revenue Code." In any event, it is well settled that "if Congress has made a choice of language which fairly brings a given situation within a statute, it is unimportant that the particular application may not have been contemplated by the legislators." *Rechner v. Commissioner,* 30 T.C. 186 (1958); *Barr v. United States,* 324 U.S. 83 (1945).

Accordingly, we hold that the shares received by petitioners in 1971 constitute "payments" subject to the imputed interest provisions of section 483.

*Decisions will be entered under Rule 155.*