**Judith F. CARPENTER, Executrix of the Estate of Ronald d'A. Carpenter**

v.

**The UNITED STATES.**

**No. 691–81T.**

United States Claims Court.

April 15, 1985.

---

Johannes R. Krahmer, Wilmington, Del., for plaintiff. Morris, Nichols, Arsht & Tunnell, Wilmington, Del., of counsel.

Allan C. Lewis, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D.C., for defendant. Theodore D. Peyser, Jr., Washington, D.C., of counsel.

## OPINION

LYDON, Judge.

This tax case involves a suit for refund of certain gift taxes plus interest. The sole issue before the court is a determination of the value of the gift. In a previous opinion, *Carpenter v. United States*, 4 Cl.Ct. 705 (1984), the court concluded that the plaintiff, Ronald d'A. Carpenter,[1] had made a gift of his one-third remainder interest in a 1927 trust, when he executed a trust agreement (1970 trust) on April 10, 1970, placing his remainder interest in an irrevocable trust for the benefit of himself, his then wife, Jeanne, and their two children. In rendering its decision determining that a gift had taken place in 1970, the court specifically left the issue of valuation open for further proceedings, including a trial if necessary. *Id.* 4 Cl.Ct. at 723. The parties subsequently advised the court that a trial was not necessary and on January 23, 1985, they filed a Stipulation of Facts. Based upon these stipulated facts both parties have filed motions for summary judgment in support of their respective valuation positions. Defendant maintains that the gift must be valued at the date of transfer, *i.e.*, April 10, 1970. Plaintiff, on the other hand, contends that the valuation arrived at pursuant to a settlement agreement entered into after a dispute over the validity of the 1970 trust, and approved by the Delaware Court of Chancery in December

---

1. For convenience, "plaintiff", in this case, will be used to refer to Ronald d'A. Carpenter, who initially filed the petition in this case on November 27, 1981. The court notes that Ronald d'A. Carpenter's widow and executrix, Judith F. Carpenter (his second wife), was substituted as plaintiff on April 18, 1983, after his death in 1982.

of 1977 should be utilized in this case because prior to that time the gift was not susceptible to valuation due to certain contingencies which warranted adoption of a "wait and see" method of valuation. After considering the Stipulation of Facts and the submissions of both parties the court concludes, without oral argument, that defendant's valuation was proper and should be utilized under the circumstances of this case.

## I. *Facts*

The court previously set out detailed findings of fact in *Carpenter v. United States, supra,* regarding the trusts at issue in this case and thus the court will focus only on those facts specifically relevant to the issue of valuation. Plaintiff's adoptive mother, Louisa d'A. Carpenter, established a 1927 trust giving her three adopted children (including plaintiff) or their surviving issue, equal shares of the trust corpus on her death. In the later 1960s, Louisa d'A. Carpenter became concerned about her adopted children's financial futures after her death. Therefore, she had her attorney draw up a new trust for each child which would place their respective remainder interests in the 1927 trust into three newly created trusts. These new trusts were explained to the children.

On April 10, 1970, plaintiff signed one of these trust agreements (1970 trust) and presumably during 1970, his two adopted sisters did the same. Plaintiff, contended he signed the 1970 trust based on groundless concerns that his mother would discontinue his financial support and perhaps disinherit him. *Carpenter v. United States, supra,* 4 Cl.Ct. at 711 n. 5. Plaintiff, however, did not like several provisions in the trust and attempted to have them altered. Plaintiff's mother's attorney agreed to make the changes but they were never made.

On February 8, 1976, plaintiff's mother died. Plaintiff attempted to block the enforcement of the 1970 trust, and instead demanded his original one-third interest in the 1927 trust, arguing that the 1970 trust was invalid. The dispute surrounding the

trusts was submitted to the Delaware Court of Chancery. In December of 1977, the parties settled their disputes. The settlement created three separate trusts out of the original 1970 trust and plaintiff received the remainder of his one-third interest in the 1927 trust which had not been distributed to the three trusts. The settlement also required plaintiff to file a federal gift tax return for the transfer of his 1927 trust interest as a taxable gift in 1970. Plaintiff reserved the right to file for a refund of any gift tax or interest paid.

On December 30, 1977, plaintiff filed a gift tax return reporting taxable gifts of $512,697.24 for the year ending December 31, 1970, and he paid a gift tax including interest on that amount. On December 21, 1979, plaintiff filed a claim for a refund for the total amount of the gift tax and interest paid. This refund claim was rejected. Subsequently, the Internal Revenue Service (IRS) issued to plaintiff a Statutory Notice of Deficiency which assessed an additional gift tax of $26,261.99 for 1970. This deficiency assessment was based on the determination by the IRS that plaintiff's 1927 trust remainder interest was valued at $631,096.83 and not $512,697.24 on April 10, 1970, the date plaintiff executed the 1970 trust. The deficiency was also based, in part, on the disallowance of a marital deduction taken on the 1970 transfer. Plaintiff paid the deficiency and sought a refund from the IRS which was rejected on September 9, 1981. Plaintiff, subsequently filed this action in the Court of Claims on November 27, 1981. In this court's initial opinion (4 Cl.Ct. 705 (1984)), the court concluded that a gift occurred on April 10, 1970, when plaintiff executed the 1970 trust. The only issue which remains is the proper valuation of the interest that plaintiff transferred into the 1970 trust.

After stipulating to the basic facts remaining in this case, each party presented its position regarding the proper method of valuation. Initially, it should be noted that both parties agree that as of April 10, 1977, the total value of the assets held in the 1927 trust was $5,154,286. One-third of

that amount was $1,718,095.33. On October 31, 1977, the value of one-third of the assets in the 1927 trust was $1,362,281.60 which excludes the interest of the 1927 trust in a shopping center which was sold previously for $1,968,000.

Plaintiff maintains that the proper value of his 1970 gift of the 1970 trust is $512,697.24. He arrived at that figure in the following manner. In December of 1977, when plaintiff and his ex-wife and her two minor children by him settled their trust disputes, he set up three new trusts. Trust I contained assets valued at $485,375.97. The primary beneficiaries of this trust were plaintiff's two children by his first wife, Jeanne, born prior to April 10, 1970. Trust II contained assets worth $244,287.65. This trust was set up for the benefit of plaintiff's two children by his second wife, Judith, who were born after April 10, 1970. Trust III, with assets totalling $86,278.50 was set up for the benefit of plaintiff's ex-wife, Jeanne. Plaintiff contends that the total of these three trusts, $815,942.12 minus $303,244.88, which is the actuarially determined income interest for life of plaintiff's mother on April 10, 1970 (0.37165 times $815,942.12), equals the proper valuation of $512,697.24.

The IRS, on the other hand, valued plaintiff's gift as a transfer on April 10, 1970, instead of valuing it in 1977 and relating it back to April 10, 1970. The IRS determined that plaintiff made a gift on April 10, 1970, in the amount of $631,096 and that the amount of his gift tax liability was $69,508.54. This tax amount was based on the gift splitting election exercised by plaintiff and his first wife Jeanne.

The IRS determined the $631,096 valuation figure in the following manner. First, it determined the present value of plaintiff's remainder interest in the 1927 trust as $997,319.98. From that amount the IRS subtracted the present value of plaintiff's gift tax liability ($40,343.82) arriving at $956,976.16. From this figure it then subtracted the present value of the interests retained by plaintiff which were capable of valuation ($325,879.33)[2] and derived the final valuation figure of $631,096.83.

The issue presented in this case is which of these two valuation approaches is proper. One other fact which is to be considered in this regard revolves around plaintiff's adopted sister, Sonia C. Tingle (Mrs. Tingle). In 1970, Mrs. Tingle also placed her remainder interest in the 1927 trust into a new trust. Though there are no facts concerning this new trust before the court, the court presumes that this new trust was similar to the one executed by plaintiff on April 10, 1970. After her adoptive mother died in 1976, Mrs. Tingle also attempted to have her 1970 trust set aside as invalid and requested her share of the 1927 trust. Mrs. Tingle was named as a defendant in the same action plaintiff was a part of in the Delaware Court of Chancery (Civil Action No. 5216). Her adult children and the guardian *ad litem* appointed for her minor children contended that the 1970 trust was valid.

On December 20, 1977, Mrs. Tingle, her adult children, and the guardian *ad litem* for her minor children, like plaintiff, settled their dispute. As part of the settlement she set up a new trust consisting of 40 percent of one-third of the assets in the 1927 trust as of October 31, 1977. Mrs.

**2.** Plaintiff retained two interests capable of valuation. He retained a 60 percent income interest for his life, the present value of which was $316,736.30. That figure was calculated by multiplying 0.6 (the income interest) times 0.32024 (plaintiff's actuarial factor on April 10, 1970) times $1,648,586.79 (the amount of plaintiff's one-third share of the 1927 trust corpus after subtracting his gift tax liability of $69,508.54). The other interest capable of valuation was a contingent remainder income interest for plaintiff's life which took effect if Jeanne, his ex-wife, predeceased him. The present value of that interest was $9,143.63 figured by multiplying 0.1 (the income interest) times 0.05566 (plaintiff's applicable actuarial factor on April 10, 1970) times the same $1,648,586.79. There were four interests retained by plaintiff in the 1927 trust which were of such a nature that they could not be valued on the basis of generally accepted valuation principles and thus whatever value they had was included in the gift. *See* 26 CFR § 2511-1(e) (1984).

Tingle was also required as part of the settlement to report a taxable gift as having taken place in 1970 when she transferred her remainder interest in the 1927 trust to a new trust. She reported the trust transfer as a taxable gift of $446,872.76 for 1970. This figure was derived by subtracting from $711,184.46, which equals 40 percent of the value of one-third of the assets of the 1927 trust on April 10, 1970 (as calculated by the taxpayers), the amount of $264,311.70. This figure equaled 0.37165 (the actuarial factor of Mrs. Tingle's mother's income interest for life in the 1927 trust on April 10, 1970) times $711,184.46. The figure of $446,872.76 upon which Mrs. Tingle determined her gift tax liability was arrived at in a manner similar to that used by plaintiff. Mrs. Tingle filed a claim for a gift tax refund on December 26, 1979. The IRS district office in Jacksonville, Florida, examined and denied the refund claim finding that she had in fact made a taxable gift in 1970. The revenue agent did not address the value of the taxable gift. Plaintiff now contends that the fact that the IRS did not question his sister's valuation approach, which was the same as that used by him, supports his proffered valuation figure.

## II.

■ In determining which proposed valuation method is proper under the circumstances of this case, the court recognizes that IRS determinations are endowed with a presumption of correctness. *Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); *Montgomery Coca-Cola Bottling Co. v. United States*, 222 Ct.Cl. 356, 365–66, 615 F.2d 1318, 1322 (1980); *Lockard v. Commissioner*, 166 F.2d 409, 414 (1st Cir.1948); *Jupiter Corp. v. United States*, 2 Cl.Ct. 58, 61 (1983). Plaintiff has the burden of overcoming this

presumption and proving in this case that the valuation method utilized by the IRS was wrong. *Welch v. Helvering, supra,* 290 U.S. at 115, 54 S.Ct. at 9; *Silverman v. Commissioner*, 538 F.2d 927, 930–31 (2d Cir.1976). After considering the stipulated facts and the briefs of both parties, the court concludes that plaintiff has failed to overcome this presumption of correctness accorded to IRS determinations.

■ The rule is that the fair market value of a gift at the date of transfer is considered the amount of the gift. *See* 26 U.S.C. § 2512 (1979). *See also Hamm v. Commissioner*, 325 F.2d 934 (8th Cir.1963), *cert. denied*, 377 U.S. 993, 84 S.Ct. 1920, 12 L.Ed.2d 1046 (1964); *Goodman v. Commissioner*, 156 F.2d 218 (2d Cir.1946). The IRS has promulgated detailed regulations which set out how transfers of property to a trust are valued. *See* 26 CFR §§ 25.-2512–5 and 25.2512–9 (1984). The regulations state that in valuing property transferred to a trust where the donor retains an interest in the property, "the value of the gift is the value of the property transferred less the value of the donor's retained interest." 26 CFR § 25.2512–5(a)(1) (1984). After reviewing the applicable valuation regulations and the facts in this case, it is clear that the IRS complied with its regulations.

In complying with its valuation regulations, the IRS established the value of plaintiff's 1970 gift by ascertaining the value of plaintiff's remainder interest in the 1927 trust and subtracting therefrom his gift tax liability and the present value of the interests he retained, when he set up the 1970 trust, which were capable of valuation. There were four interests retained by plaintiff or his estate which the IRS found incapable of valuation.[3] In this re-

---

3. The four retained interests incapable of valuation include the following. Plaintiff had contingent remainder income interests in the income interests to Mary (his daughter) and her issue and to Ronald, Jr., (his son) and his issue for the life of plaintiff. Plaintiff's estate had a reversionary interest in Trust A (presumably a part of the 1970 trust) in the case where a child

of plaintiff survived him except in the situation where Jeanne (his ex-wife) took a life income interest and a child predeceased her but survived plaintiff. Plaintiff's estate also had a reversionary interest in Trust B (again presumably a part of the 1970 trust) in the context where a child of plaintiff survived him.

gard, 26 CFR § 25.2511–1(e) (1984) provides:

> (e) If a donor transfers by gift less than his entire interest in property, the gift tax is applicable to the interest transferred. The tax is applicable, for example, to the transfer of an undivided half interest in property, or to the transfer of a life estate when the grantor retains the remainder interest, or vice versa. However, if the donor's retained interest is not susceptible of measurement on the basis of generally accepted valuation principles, the gift tax is applicable to the entire value of the property subject to the gift. Thus if a donor, aged 65 years, transfers a life estate in property to A, aged 25 years, with remainder to A's issue, or in default of issue, with reversion to the donor, the gift tax will normally be applicable to the entire value of the property.

Therefore, the IRS's valuation, which included in the value of the gift the four interests it was unable to value, was in accordance with the regulations. For further support for the IRS's decision, to include within the value of the gift the retained interests incapable of valuation see *Robinette v. Helvering*, 318 U.S. 184, 188–89, 63 S.Ct. 540, 542, 87 L.Ed. 700 (1943).[4]

Plaintiff maintains, however, that since the interests transferred in 1970 were not capable of valuation based on the facts known at that time, the valuation should be based on subsequent events which would result in the tax being imposed on what property was actually transferred rather than on property and interests which were never transferred. Plaintiff contends that the later ascertained events are then related back to 1970 to determine the valuation of the gift. The court rejects this proposed "wait and see" approach to valuing gifts on several grounds.

Plaintiff cites Rev.Rul. 69–346, 1969–1 C.B. 227 in support of its position. Rev. Rul. 69–346 dealt with an agreement between a husband and wife in which the husband agreed to set up a trust in his will to provide for his wife's comfort if she agreed to transfer her one-half interest in their community property to the trust. The wife was not required to transfer her interest in the community property under the agreement until after her husband's death and the executor of his estate had completed administration of the estate and assumed the duties as trustee of the trust provided for in the will. The issue in that case was, for federal gift tax purposes, when was the wife deemed to have completed her gift. The IRS held that a gift occurs on the date "upon which a promise to make a future transfer becomes enforceable under state law, and not the date upon which an actual transfer of property is made, provided the gift is susceptible of valuation at the time it becomes enforceable."

The court finds the facts in Rev.Rul. 69–346 to be inopposite to those in this case. In Rev.Rul. 69–346, there was an enforceable agreement to transfer property in the future. However, the IRS found that no gift occurred until the husband's death because that was the point when the gift first became susceptible of valuation. In this case, the court has already found that a gift occurred on April 10, 1970, with the transfer of interests in the 1927 trust to the 1970 trust. The court can perceive under the facts in Rev.Rul. 69–346 that at the time the agreement became enforceable it may have been difficult, if not impossible, to ascertain the value of the property which was to be transferred in the future. However, in this case the gift and the transfer of interest occurred simultaneously making a valuation problem less likely to occur. In fact, in this case the regulations,

---

**4.** Plaintiff argues that *Robinette v. Helvering*, 318 U.S. 184, 63 S.Ct. 540, 87 L.Ed. 700 (1943) is distinguishable from the case at bar because in *Robinette,* the trustor actually transferred property into the trust at the date of the gift, whereas in this case there was only a promise of a future transfer. This position maintained by plaintiff ignores the law of this case established in *Carpenter v. United States,* 4 Cl.Ct. 705 (1984) which established that a gift and transfer occurred on April 10, 1970.

cited above, provide the method of valuation. The fact that certain interests were of the nature that made it impossible to value them did not render the transfer insusceptible to valuation. To the contrary, both 26 CFR § 25.2511–1(e) and *Robinette v. Helvering, supra,* set out the proper valuation approach to utilize when certain retained interests cannot be valued. Therefore, not only are the facts surrounding the agreement and subsequent transfer in Rev. Rul. 69–346 distinguishable from the gift as found to exist by the court in this case, but also there is an established valuation method found in the applicable regulations which can be used in this case to value the transferred interests.

The court perceives plaintiff's reliance on Rev.Rul. 69–346 and *City Farmers Trust Co. v. Hoey,* 101 F.2d 9 (2d Cir.1939) as an indirect effort to resurrect a portion of its argument concerning when the gift occurred in this case in the context of valuing the interests which were transferred. Rev. Rul. 69–346 dealt with a situation in which an agreement was entered into but the actual transfer of property, which was susceptible to valuation, did not occur until later. In *City Farmers Trust Co. v. Hoey, supra,* a state court ordered the plaintiff to make certain payments to the daughter and grandchildren of an incompetent person over whose property the plaintiff was acting as trustee. This court order occurred prior to the effective date of the Gift Tax Act of 1932. However, the actual transfer of payments did not occur until after the effective date. The issue in the case was when did the gift occur. The court held that, despite the court order, no gift occurred until the money was actually transferred to the donee. The court assumes that plaintiff cited the Revenue Ruling, *supra* and the *Hoey* case to support its view that until an actual transfer takes place which is also susceptible to valuation, there can be no gift. The court, however, has already concluded that a gift occurred on April 10, 1970, which included a transfer which was sufficiently susceptible to valuation, pursuant to the applicable regulations, that it could be valued at that time. The court, therefore, rejects any valuation position plaintiff is attempting to support with the above two cases. At the same time the court rejects any implicit attempt by plaintiff to again argue that no gift and associated transfer occurred until after his mother's death. *Carpenter v. United States, supra,* constitutes the law of the case on the issue of when a gift and transfer occurred in this case. *See Dept. of Nat. Res. & Cons. of State of Montana v. United States,* 1 Cl.Ct. 727, 733–35 (1983).[5]

The court also finds fault with plaintiff's proposed valuation approach on another ground. The court found that a gift occurred on April 10, 1970. The Internal Revenue Code requires that gifts be valued on the date of transfer which was April 10, 1970. *See* 26 U.S.C. § 2512(a) (1979). Plaintiff, arguing that a portion of the interests transferred on that date were incapable of valuation, requests that this court adopt a "wait and see" approach to valuation. However, plaintiff's proposed method did not wait and see what plaintiff's retained interests might be worth. Instead, pursuant to a settlement agreement, the gift which this court found to have occurred on April 10, 1970, was altered and certain concrete assets were transferred from the 1927 trust into the three new trusts mentioned earlier. Plaintiff's valuation method only valued these concrete assets transferred to the three trusts. Plaintiff made no attempt to value the retained contingent interests he had under the 1970 trust or under the three new trusts which were established pursuant to settlement.

Under the approach proposed by plaintiff anyone who created a valid trust, which would not actually go into effect until sometime in the future, could wait until the

---

5. The strength of plaintiff's argument in support of his proposed valuation method was diminished by his insistence on questioning the court's holding, in *Carpenter v. United States,* 4 Cl.Ct. 705 (1984), that a transfer and a gift took place on April 10, 1970. Said holding constitutes the law of the case, and plaintiff's efforts to value the gift based on a theory that the date of the gift and the date of the transfer were different were unpersuasive.

effective date, contest the validity of the trust, enter into a settlement with the potential beneficiaries, alter the terms of the initial trust, and then propose to only pay a gift tax based on the assets actually transferred under the trusts created by the settlement agreement as opposed to paying a tax based upon the property initially transferred, less the retained interests pursuant to 26 CFR § 25.2512–5(a)(1). Such an approach is contrary to the intent of 26 U.S.C. § 2512(a) which dictates that a gift shall be valued on the date of the gift. Plaintiff's proposed valuation technique is also violative of the policy behind the rule that the value of a gift at an antecedent time will not be considered. *See Goodman v. Commissioner*, 156 F.2d 218 (2d Cir.1946). The fact that plaintiff proposed relating the value of the assets transferred to the new trusts under the settlement agreement back to 1970 does not alter this court's view that plaintiff is essentially changing the 1970 gift and relying in part on antecedent events to arrive at a valuation. Finally, allowing taxpayers to wait until a much later date to ascertain the value of gifts, similar in nature to the trust executed by plaintiff on April 10, 1970, would introduce unintended delays, confusion, and complexity into an existing complex process which already contains a means to value such gifts.

Plaintiff asserts that if the court adopts defendant's proposed valuation it will create an injustice and unequal treatment between taxpayers. Plaintiff points out that his sister, Mrs. Tingle, valued the 1970 trust that she executed in a manner similar to that proposed by plaintiff. When Mrs. Tingle submitted her gift tax return the method of valuation was not questioned. When she applied for a refund of the gift taxes which she had paid arguing that no gift occurred in 1970, the IRS denied her refund request but assessed no deficiency based on her chosen valuation method. Plaintiff contends that the method chosen by himself and his sister was correct.

Plaintiff also maintains that, even if the IRS approach is also correct, it would be unfair to treat his sister one way and him another. He argues that evenhanded administration of the tax laws is necessary in order to promote fairness.

The Court of Claims stated that our tax law often takes the following stance:

> [T]axpayers can never avoid liability for a proper tax by showing that others have been treated generously, leniently, or erroneously by the Internal Revenue Service—each must rest, in every instance, on the validity of his own position, under the applicable taxing provision, independently of the others. [*International Business Machines Corp. v. United States*, 170 Ct.Cl. 357, 365, 343 F.2d 914, 919 (1965), *cert. denied*, 382 U.S. 1028, 86 S.Ct. 647, 15 L.Ed.2d 540 (1966) ]

However, the Court of Claims in *International Business Machines Corp. v. United States, supra*, found that the commissioner's failure to give the same "business machines" tax exemption to two competitors in the field of large electronic computing systems was inequitable and discriminate treatment under the tax laws. The court emphasized the competitive advantage that such an inconsistent application of the law gave to the manufacturer which received the tax exemption over the other which did not. It also specifically emphasized that that case concerned the commissioner's exercise of discretion under section 7805(b) in a situation in which two separate taxpayers asked for private rulings from the commissioner on the same issue and were treated differently.

■ The Court of Claims subsequently restricted *International Business Machines Corp. v. United States*, to the particular circumstances of that case. *Knetsch v. United States*, 172 Ct.Cl. 378, 391 n. 14, 348 F.2d 932, 940 n. 14 (1965); *Rue R. Elston Co. v. United States*, 532 F.2d 1176, 1180 n. 10 (8th Cir.1976).[6] In

---

**6.** In his dissenting opinion in *Righter v. United States*, 194 Ct.Cl. 400, 431–35, 439 F.2d 1204, 1221–24 (1971), Judge Davis, the author of the

majority opinion in *International Business Machines Corp. v. United States*, 170 Ct.Cl. 357, 343 F.2d 914 (1965), *cert. denied*, 382 U.S. 1028, 86

fact, the Court of Claims consistently resisted subsequent discrimination claims asserted by taxpayers. In *Wagner v. United States*, 181 Ct.Cl. 807, 817–18, 387 F.2d 966, 972 (1967) the court stated:

> Nor did discrimination result from the circumstances that other persons * * * may have never paid a gift tax * * *. * * The fact that all taxpayers or all areas of the tax law cannot be dealt with by the Internal Revenue Service with equal vigor and that there thus may be some taxpayers who avoid paying the tax cannot serve to release all other taxpayers from their obligation. As this court said in *Kehaya v. United States*, 174 Ct.Cl. 74, 78, 355 F.2d 639, 641 (1966): "The Commissioner's failure to assess deficiencies against some taxpayers who owe additional tax does not preclude him from assessing deficiencies against other taxpayers who admittedly owe additional taxes on the same type of income. The Commissioner might reasonably conclude that a re-audit of * * * returns * * * would not produce sufficient additional revenue to justify the undertaking. Such a decision would certainly not be arbitrary."

For further support for the view that the IRS is not bound to treat one taxpayer in one case like it did another taxpayer, in another case, *see Dixon v. United States*, 381 U.S. 68, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965); *Chicago, Burlington & Quincy R.R. Co. v. United States*, 197 Ct.Cl. 264,

455 F.2d 993 (1972) *rev'd on other grounds*, 412 U.S. 401, 93 S.Ct. 2169, 37 L.Ed.2d 30 (1973); *Crespo v. United States*, 185 Ct.Cl. 127, 399 F.2d 191 (1968); *Shakespeare Co. v. United States*, 182 Ct.Cl. 119, 389 F.2d 772 (1968).

█ Therefore, the fact that the IRS may have accepted plaintiff's sister's valuation and rejected his similar methodology does not require the court in the interest of fairness to accept plaintiff's valuation. If plaintiff's sister did use the same valuation process utilized by plaintiff then it was safe to assume that it was erroneous. *Dixon v. United States, supra,* clearly establishes that the IRS is not bound by prior erroneous decisions.

Another factor which distinguishes this case from *International Business Machines Corp.* is in that case two taxpayers asked for private rulings from the commissioner and the commissioner treated them differently. In this case the stipulated facts indicate that plaintiff filed his gift tax return for 1970 in the IRS's Mid-Atlantic region office. A revenue agent reviewed the return and at some point assessed the deficiency. Plaintiff filed his refund claim after paying the deficiency in the IRS district office in Wilmington, Delaware. Plaintiff's sister, on the other hand, apparently filed her gift tax return for 1970 in the IRS district office in Jacksonville, Florida. She received no deficiency notice from that office. She subsequently filed a claim

S.Ct. 647, 15 L.Ed.2d 540 (1966), limited the applicability of the "equality of treatment" principle set out in *International Business Machines Corp.* Judge Davis explained:

"The Court's concern in that case was the adverse competitive effects of the inconsistent positions of the Internal Revenue Service upon the operations of two similarly situated business competitors. The Commissioner there exercised a statutorily conferred discretion by denying an application for an excise tax exemption in one situation and granting it to a competitor identically situated. The court refused to sanction such discrimination between the two business concerns operating in the field. It construed the statute as directing the Commissioner to apply equality of excise tax treatment to competitors similarly situated. Obviously, such a situation is hardly applicable to the type of

estate tax issue here involved which concerns only the factual problem of fair market value of a certain block of stock on a certain date. The Internal Revenue Manual merely provides that 'it may not be necessary to make another detailed analysis of the stock' in the situation where 'a valuation has been made in a prior estate * * * provided the valuation date on the prior estate is within reasonable proximity to the current date and the pertinent facts have not changed substantially.' Surely, such a discretionary authorization in limited situations neither constitutes a directive to the agents to accept at all times in the future a stock valuation made in a prior estate, nor does it give a taxpayer anything in the nature of a vested right to have the prior valuation applied to his return." [*Righter v. United States, supra,* 194 Ct.Cl. at 432–33, 439 F.2d at 1222]

for a refund in the same office and it was denied. There is no evidence that the IRS even considered the valuation issue at the time it considered her refund claim. Therefore, the facts indicate that, unlike *International Business Machines Corp.*, in which the commissioner made both private rulings, in this case there was first, no requests for private rulings, and second, the determinations were being made by different revenue agents who may not have considered the same factors and who probably had no knowledge of the fact that other individuals were paying gift taxes on similar trust arrangements.

The court concludes that plaintiff has fallen far short of his burden to overcome the presumptive correctness accorded to IRS assessments by showing that the IRS valuation method in this case was erroneous. In fact, after considering the stipulated facts, and submissions of the parties, the court concludes that the valuation method utilized by the IRS was in accordance with the regulations and otherwise proper. Plaintiff's proposed "wait and see" valuation procedure, on the other hand, though it may be applicable in some cases, was inappropriate in this case when the gift and transfer occurred simultaneously and regulations existed to value such a gift. The court also finds that it is not bound to accept plaintiff's valuation based on the fact that the IRS failed for some reason to question a similar valuation approach utilized by his sister.

### III.

Based on the above discussion, the court grants defendant's motion for summary judgment, denies plaintiff's cross-motion for summary judgment and directs the clerk to dismiss the complaint.