Lester H. KRABBENHOFT; Anna
Krabbenhoft, Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE, Appellee.

No. 90–2876.

United States Court of Appeals,
Eighth Circuit.

Submitted May 16, 1991.

Decided June 27, 1991.

Rehearing and Rehearing En Banc
Denied Aug. 9, 1991.

Bruce Carlson, argued (Bruce H. Carlson
and David J. Hauff, on the brief), Fargo,
N.D., for appellants.

Richard Farber, argued (Gary R. Allen,
Richard Farber and Teresa T. Milton, on
the brief), Washington, D.C., for appellee.

Before FAGG, and MAGILL, Circuit
Judges, and HENLEY, Senior Circuit
Judge.

MAGILL, Circuit Judge.

Lester and Anna Krabbenhoft appeal the
Tax Court's [1] decision affirming the Com-
missioner's assessment of gift tax liability
against each of them. The Krabbenhofts
challenge on appeal the Tax Court's deter-
mination that 26 U.S.C. § 483's "safe har-
bor" interest rate does not apply to the

---

1. The Honorable Charles E. Clapp, II, Judge,     United States Tax Court.

valuation of a contract for purposes of determining gift tax liability, and that court's holding that the interest rate the Commissioner used to value the contract at issue was proper. We affirm.

## I.

On June 29, 1981, the Krabbenhofts, Minnesota farmers, transferred land to their sons by means of a contract for deed. The contract provided for a purchase price of $400,000, an interest rate of six percent, and thirty annual payments of $29,060.

On May 11, 1987, the Commissioner issued separate statutory notices of deficiency to the Krabbenhofts; the notices stated that for 1981 each owed $26,444 in gift tax. The deficiency assessment resulted from the Commissioner's having determined that the contract for deed had a 1981 present value of $252,642, although the fair market value of the land was $443,400. The Commissioner classified the $190,758 difference in value as a gift, and assessed gift tax liability accordingly. To determine the 1981 present value of the contract for deed, the Commissioner used an eleven percent interest rate.

The Krabbenhofts petitioned the United States Tax Court for a review of the Commissioner's determination. The Krabbenhofts raised two main challenges to the Commissioner's decision. First, they argued that the Commissioner erred in going behind the face value of the contract for deed to determine its 1981 present value. The Krabbenhofts based this argument on 26 U.S.C. § 483,[2] which they contended entitled them to use the "safe harbor" interest rate provided for in that section, and bound the Commissioner to use the same rate for gift tax valuation purposes. In making this argument, the Krabbenhofts relied in part on the Seventh Circuit's decision in *Ballard v. Commissioner*, 854 F.2d 185 (7th Cir.1988), where that court overturned a prior Tax Court determination that § 483 did not apply to the valuation of contracts for gift tax purposes.

The Krabbenhofts also argued that even if § 483 did not apply, the Commissioner had incorrectly used an eleven percent interest rate to determine the 1981 present value of the contract for deed. They contended that their six percent rate was consistent with the rates for similar types of transactions at the time.

The Tax Court disagreed with the Krabbenhofts on both points, and upheld the Commissioner's assessment of gift tax liability. *See Krabbenhoft v. Commissioner*, 94 T.C. 887 (1990). The Tax Court concluded that § 483 applied to impute interest rates on installment sales contracts for income tax purposes, and was not relevant to determining value for gift tax purposes. *Id.* at 890. Because the Tax Court believed that *Ballard* was wrongly decided, and because the Krabbenhofts' case would be appealed to this court, and not the Seventh Circuit, the Tax Court expressly refused to follow *Ballard*. *Id.*

The Tax Court also ruled that the Krabbenhofts did not prove that the Commissioner's use of an eleven percent interest rate was incorrect. *Id.* at 892. The Tax Court thus upheld the Commissioner's assessment, although as a result of certain stipulations the Krabbenhofts' liability was reduced to $19,568 each. The other members of the Tax Court reviewed the decision: thirteen members of the court agreed with it, two dissented. The Krabbenhofts now appeal.

## II.

### A. Section 483

■■■ The Krabbenhofts first argue that the Tax Court erred in holding that 26 U.S.C. § 483 does not apply to gift tax valuation. At the time of the transaction in question, 26 U.S.C. § 2512 addressed the valuation of gifts. The statute provided:

(a) If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift.

(b) Where property is transferred for less than an adequate and full consideration in money or money's worth, then the

---

**2.** *See infra* Part II.

amount by which the value of the property exceeded the value of the consideration shall be deemed a gift.... 26 U.S.C. § 2512 (1976). The amount of the gift is its fair market value at the time of transfer. *Carpenter v. United States,* 7 Cl.Ct. 732, 736 (1985), *aff'd mem.,* 790 F.2d 91 (Fed.Cir.1986). To determine the fair market value of an installment sales contract, the Commissioner is entitled to consider a number of factors, including the face value of the contract, its interest rate, the interest rate used in similar transactions, and the length of the contract. *See Blackburn v. Commissioner,* 20 T.C. 204, 207 (1953).

The Krabbenhofts argue that the plain language of § 483 forecloses a determination of fair market value when an installment sales contract provides for interest in the amount the statute prescribes. At the time of the transaction in this case, § 483 provided, in pertinent part:

(a) Amount constituting interest

For purposes of this title, in the case of any contract for the sale or exchange of property there shall be treated as interest that part of a payment to which this section applies which bears the same ratio to the amount of such payment as the total unstated interest under such contract bears to the total of the payments to which this section applies which are due under such contract.

(b) Total unstated interest

For purposes of this section, the term "total unstated interest" means, with respect to a contract for the sale or exchange of property, an amount equal to the excess of—

(1) the sum of the payments to which this section applies which are due under the contract, over

(2) the sum of the present values of such payments and the present values of any interest payments due under the contract.

For purposes of paragraph (2), the present value of a payment shall be determined, as of the date of the sale or exchange, by discounting such payment at the rate, and in the manner, provided in regulations prescribed by the Secretary.

26 U.S.C. § 483 (1976).

Before § 483 was enacted, if the parties to an installment sales contract did not provide for interest on the deferred payments, the seller could treat the entire amount received (to the extent that it exceeded the seller's adjusted basis in the property) as capital gain, even though some of the amount likely represented interest. The advantage to this was that capital gain was taxed at a lower rate than interest, which was taxed as ordinary income. After § 483's enactment, if an installment sales contract did not provide for interest, the interest rate from the relevant regulation would be imputed to recharacterize part of the payments as interest. In June 1981, this interest rate was seven percent compounded semi-annually. The regulation also provided, however, that if the contract provided for an interest rate of at least six percent, no higher rate would be imputed to recharacterize any part of the payments as interest. *See* Treas.Reg. § 1.483–1 (1981), *reprinted in* 1 Federal Tax Regulations 2112–15 (1981).

The Senate Report accompanying the enactment of § 483 stated the general reason for the statute:

Your committee agrees with the House that there is no reason for not reporting amounts as interest income merely because the seller and purchaser did not specifically provide for interest payments. This treats taxpayers differently in what are essentially the same circumstances merely on the grounds of the names assigned to the payments. In the case of depreciable property this may convert what is in reality ordinary interest income into capital gain to the seller.... The House and your committee believe that manipulation of the tax laws in such a manner is undesirable and that corrective action is needed.

S.Rep. No. 830, 88th Cong., 2d Sess., § IV.B.29(b), *reprinted in* 1964 U.S.Code Cong. & Admin.News 1673, 1775.

■ The Krabbenhofts argue that because § 483(a) begins, "For the purposes of

**532**

this title ...", that section applies to the entire Tax Code. We agree. As will be shown, however, that does not help the Krabbenhofts. Reasoning from the premise that § 483 applies to the entire Tax Code, the Krabbenhofts next argue that because § 483 provides that interest will not be imputed to installment sales contracts that feature an interest rate of at least six percent, the use of a six percent interest rate also bars the Commissioner from determining the present value of the contract for purposes of assessing gift tax liability. The flaw in this argument is the assumption that § 483 is relevant to the determination of present value for gift tax purposes. As the Tax Court opined:

> We agree that the prefatory language of section 483 is unambiguous, and that section 483 therefore applies to all sections of the Code to which it is relevant. However, we find nothing in the language of section 483 that indicates that this section has anything to do with valuation. The section merely characterizes payments as principal or interest, while gift tax valuation is concerned with the value of all payments, whether of principal or of interest. The character of a payment does not affect its value for gift tax purposes.

94 T.C. at 890. The Krabbenhofts argue that the Tax Court's statement that § 483 applies to all sections of the Code to which it is relevant "flies in the face" of our decision in *Robinson v. Commissioner*, 439 F.2d 767 (8th Cir.1971) (per curiam), where we stated: "Even though § 483 does not specifically refer to [26 U.S.C.] § 453, the former provision is applicable to § 453 because § 483 is couched in the comprehensive and unambiguous language that it is to apply for 'purposes of this title.'" *Id.* at 768. The Krabbenhofts' reliance on *Robinson* is misplaced. In *Robinson*, it was clear that § 483 applied to § 453 because the latter addressed the installment basis of reporting income and the former addressed the recharacterization of parts of installment payments. Therefore, § 483 applied to § 453 *because it was relevant to that section.*

We believe § 483 is not relevant to the gift tax statute, § 2512. The Krabbenhofts place great weight on the broad introductory language of § 483(a), but ignore the simple fact that nothing in § 483 makes it relevant to valuation for gift tax purposes. Section 483 is not a definitional or policy-type statement of wide-ranging applicability, like, for example, "Fair market value means X." If that were the case, then every time "fair market value" appeared in the Tax Code, § 483 would be relevant, and would apply. Rather, § 483 operates to recharacterize certain amounts of installment or deferred payments as interest. The Krabbenhofts cite many cases where § 483 was applied to another provision of the Tax Code. Those cases, however, all involved installment or deferred payments, and thus § 483 was relevant. *See Kingsley v. Commissioner*, 662 F.2d 539, 542–45 (9th Cir.1981); *Vorbleski v. Commissioner*, 589 F.2d 123, 132–34 (3d Cir.1978); *Katkin v. Commissioner*, 570 F.2d 139, 142 (6th Cir.1978); *Solomon v. Commissioner*, 570 F.2d 28, 34–37 (2d Cir. 1977); *Jeffers v. United States*, 214 Ct.Cl. 9, 10, 556 F.2d 986, 987 (1977); *Cocker v. Commissioner*, 68 T.C. 544, 555 (1977); *Catterall v. Commissioner*, 68 T.C. 413, 419–22 (1977).

The only other pertinent argument that the Krabbenhofts proffer is that we should follow the Seventh Circuit's decision in *Ballard v. Commissioner*, 854 F.2d 185 (7th Cir.1988). In *Ballard*, the Seventh Circuit first concluded that § 483 applied to the entire Tax Code. *See id.* at 188. On this point we are in complete agreement. The Seventh Circuit next concluded, without much analysis, that § 483 specifically applied to valuation for gift tax purposes. *Id.* at 189; *see also Cohen v. Commissioner*, 910 F.2d 422, 428 (7th Cir.1990) ("In *Ballard*, this court held that § 483 applied to limit the interest rate which could be used to value the gift which resulted from a below-market installment sales transaction between a mother and her children."). It appears that counsel for the Commissioner was at least partly responsible for this conclusion, having speciously argued that if the taxpayer had used no interest rate, a

seven percent rate would have been used for both income and gift tax purposes, but because the taxpayer used the six percent "safe harbor" rate, the Commissioner could use an eighteen percent market rate for gift tax valuation purposes. *Ballard*, 854 F.2d at 189. The Seventh Circuit commented: "Though perhaps well suited for a fairy tale, this sort of logic fails here." *Id.*

In this case, the Commissioner has repudiated the argument his counsel made in *Ballard*, stating that it was contrary to the Commissioner's position at that time as well as now. We thus have no "fairy tale logic" to contend with in this case. Therefore, we conclude that § 483 does not limit the interest rate the Commissioner can use in valuing an installment sales contract for gift tax purposes because § 483 is simply irrelevant to such a determination.

### B. The Valuation Evidence

■ The Krabbenhofts also argue that even if § 483 is irrelevant to the determination of fair market value, the Tax Court erred in accepting the Commissioner's use of an eleven percent interest rate to compute the 1981 present value of their contract. In selecting an interest rate for use in computing fair market value, the Commissioner may rely on the rate for similar transactions. *See Blackburn*, 20 T.C. at 207. In this case, the Commissioner introduced as evidence the following June 1981 interest rates: the average prime rate was 20.3%; the average interest rate on conventional first mortgage loans for a single family home was 14.12 to 14.40%; and the Minnesota office of the Federal Land Bank's rate was 10.75%. *See* 94 T.C. at 891–92.

In challenging the Commissioner's method of valuation, the Krabbenhofts had the burden of proving that the Commissioner's method was incorrect. *See Carpenter*, 7 Cl.Ct. at 736. To satisfy this burden, the Krabbenhofts attempted to introduce three pieces of evidence. Their first piece of evidence was a Treasury official's response to a question from a Senate subcommittee during 1981 hearings on imputed tax rates and § 483. A subcommittee member asked

the official: "Are contracts for deed prevalent in the 6 to 8 percent range or something like that." The official answered: "Right." *See* Joint Appendix at 130. The Tax Court considered this testimony but did not give it much weight because of its "off-hand nature." 94 T.C. at 891. The Krabbenhofts also sought to introduce testimony at the same hearings from an agricultural economist on the issue of the interest on contract for deed sales in Minnesota. The Tax Court concluded that this material was inadmissible hearsay, and should have been introduced by expert testimony subject to cross-examination to guarantee its trustworthiness. *Id.* Finally, the Krabbenhofts sought to introduce a graph depicting how interest rates on seller-financed real estate were lower than Federal Land Bank rates. The Tax Court excluded this evidence on the basis of relevance, because other factors not present in the Krabbenhofts' situation were apparently included in the calculations supporting the graph. *Id.* Based on the first piece of evidence, the Tax Court concluded that the Krabbenhofts had not proved that the Commissioner's use of an eleven percent interest rate was incorrect.

As an initial matter, we agree with the Tax Court's conclusion as to the graph. The economist's testimony presents a closer question. The Krabbenhofts argue that this testimony was admissible hearsay under Fed.R.Evid. 803(8), which provides for the admissibility of certain official records, reports, and statements. However, the "[a]nalysis of trustworthiness and ultimate determination of admissibility of records, reports, [and] statements ... is committed to the sound discretion of the trial court," and we will not reverse such a determination unless there has been an abuse of discretion. *See O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1204 (8th Cir.1990). On the record in this case, we find no abuse of discretion. Thus, the only evidence contradicting the Commissioner's use of the eleven percent rate was the Treasury official's casual response at the Senate hearings. We agree with the Tax Court's conclusion that this evidence was insufficient to prove that the Commissioner's rate was incorrect. Therefore, the Tax Court properly held

that the Krabbenhofts failed to prove that the Commissioner's use of an eleven per cent interest rate to value their contract for deed was incorrect.

### III.

Accordingly, we affirm the judgment of the Tax Court.

HENLEY, Senior Circuit Judge, concurring.

With deference to the views of the district court and the views of the majority concerning statutory construction, I feel compelled to concur in the result reached by the panel. My concurrence is reluctant. It is not at all clear to me that Congress wanted or anticipated application of the gift tax to a family transaction like the one consummated by the Krabbenhofts. Congress certainly did not anticipate the runaway interest rates in existence in the early 1980's, including a prime rate of nearly twenty per cent. Although the total tax assessed in this case was just over $50,-000.00, with interest for about ten years added on, the actual balance due now is much more than that amount.

Looking at § 483 in isolation and ignoring subsequent legislation, it is possible to conclude the "safe harbor" provision is applicable only to the income tax. In reaching this technical conclusion, one must accept the proposition that Congress either intended, or else simply failed to consider, the possible "gift tax traps" that would be created any time market rates rose above six per cent. The Krabbenhofts were caught by two of these traps. First, although their transaction was safe from income tax revaluation, it was revalued for gift tax purposes. The other trap that caught the Krabbenhofts resulted from the procedure of permanently determining gift tax on the date of sale. Since market rates were particularly high at that date, their long-term sale was forever valued at a substantial discount.[1] In the real world, taxpayers can refinance their loans, but

they cannot have their gift tax later readjusted for changed conditions.

At the time the Krabbenhofts transferred the land, the six per cent rate was the only specific statutory guidance they had. This rate appeared with respect to § 483 transfers, and in Treasury Regulation § 25.2512–9, which is used in valuing life and remainder interests. Historically, six per cent was a reasonable "safe harbor" rate with many loans and home mortgages issued during the 1970's at even lower rates. It was not until about 1980 that rates began to skyrocket.

Unfortunately, Congress did not get around to dealing with the problem until the 1983–1984 term when it created a uniform market-based system of interest rates. Through §§ 1271–74, Congress enacted a market rate system for different types of loans that is updated periodically through Revenue Procedures. As government's counsel confirmed at oral argument, sections such as 483 and 7872 (low interest or no interest loans), now govern the *gift and income* tax treatment of most loans. Congress also updated the estate and gift tax regulations to provide for a ten per cent interest rate for use in valuing life and remainder interests. The more comprehensive and realistic system of rates in existence now is of no help to the Krabbenhofts, however, because their transaction happened to fall in the legislative and economic "no man's land" between 1980 and 1983.

The plain language of the statute strongly suggests the "safe harbor" provision is only relevant to the income tax. Even if one ignores the plain language and goes beyond the text, the legislative history presented on appeal is simply inadequate for me to conclude with confidence that the tax court and this panel have erred as a matter of law in interpreting § 483. The legislative history presented to us in this case is simply inconclusive as to the scope of § 483. The application of the statute based on the majority's interpretation, though seemingly harsh in this case, has

---

1. At oral argument, government counsel admitted if an installment sale is made using a variable rate instrument, as long as the rate is tied to an index such that a market rate comparable to the Internal Revenue Service rate is assured, no gift tax revaluation of the transaction would

likely occur. This may be the only way, however, for taxpayers consummating long-term installment sales during periods of high interest rates to complete a transaction in a manner that is both affordable for the buyer and safe from gift tax assessment.

not been argued to be, and the record before us does not clearly demonstrate that it is, in violation of the due process, equal protection or other requirements of the Constitution, though such an argument might well be made in another case.

As for part B of the panel's opinion, I agree that the trial court is in a much better position to evaluate the evidence than are we. It seems to me that the valuation issue is a close one and that other evidence may have been available, though not presented in this case, that would have been sufficient to support the interest rate used by appellant and refute the government's assessment.

Although this may be of small comfort to the Krabbenhofts, my concerns with the issues raised here are somewhat diminished by the hope that relatively few taxpayers will be affected by our decision here today. Not only might another taxpayer be successful on the merits where the Krabbenhofts were not, but only a small percentage of transactions occurring in the early 1980's are likely to be affected. As indicated, I concur in the result reached by the majority of the panel.