Benjamin and Alice FOX, Appellants,

v.

UNITED STATES of America.

No. 74–1433.

United States Court of Appeals, Third Circuit.

Argued Dec. 12, 1974.

Decided Feb. 14, 1975.

Mervin M. Wilf, Robert A. Hanamirian, Philadelphia, Pa., for appellants; Hudson & Wilf, Philadelphia, Pa., of counsel.

Scott P. Crampton, Asst. Atty. Gen., Ernest J. Brown, Dennis M. Donohue, Tax Div., Dept. of Justice, Washington, D. C., for appellee; Robert E. J. Curran, U. S. Atty., Philadelphia, Pa., of counsel.

Before ALDISERT, ADAMS and HUNTER, Circuit Judges.

OPINION OF THE COURT

ALDISERT, Circuit Judge.

The question for decision is whether a husband settling a sum of $1,000,000 on his wife, pursuant to a divorce-related property settlement agreement, is entitled to a deduction under Section 483 of the Internal Revenue Code of imputed interest in the installment payments. The district court denied taxpayers' claims for refund. This appeal followed. We affirm.

The facts giving rise to this dispute are neither complicated nor controverted. On March 20, 1967, Benjamin Fox and his then wife, Juliette, contemplating divorce, entered into a written agreement providing for the division of personal property, real property, and securities. Additionally, Benjamin agreed to pay

Juliette the sum of $1,000,000 of which $300,000 was to be paid upon the entry of a final decree of absolute divorce; the remainder was to be paid in quarterly installments[1] extending over a period of nine and one-half years.[2] In the district court, the taxpayers and the Commissioner stipulated that "[t]he payment of interest on the deferred installments was not intended by the parties at the time the settlement agreement was signed, since it stated that the payments were to be 'without interest'."

Taxpayers argue here, as they did in the district court, that Section 483 applies to this property settlement agreement, and, accordingly, Benjamin is entitled to a deduction equal to what is described in his brief as the "unstated interest portion of each deferred payment

he has made to his former wife during the taxable years here involved. This unstated interest is commonly referred to as 'imputed interest'. Under the statutory scheme of Section 483[3], imputed interest exists when deferred payments, which meet the requirements of Section 483(b) [sic] . . ., do not provide for interest at a designated minimum rate." Appellants' Brief at 9 (footnotes omitted).

The cornerstone of taxpayers' argument is the provision in Section 483(a) stating that "[f]or purposes of this title, in the case of any contract for the sale or exchange of property", a part of the payment shall be treated as unstated interest. They argue that the payments at issue are not excepted by Section 483(f) and build upon *United States v. Davis,*

1. The amount of each installment was established in the agreement and varied from a low of $12,500 to a high of $80,000.

2. This appeal seeks refunds for only the years 1967, 1968 and 1969. Benjamin and his present wife, Alice, filed joint returns for the three years; both were plaintiffs in the suit for refund.

3. 26 U.S.C. § 483. Interest on Certain Deferred Payments.

(a) *Amount constituting interest.*—For purposes of this title, in the case of any contract for the sale or exchange of property there shall be treated as interest that part of a payment to which this section applies which bears the same ratio to the amount of such payment as the total unstated interest under such contract bears to the total of the payments to which this section applies which are due under such contract.

\* \* \* \* \* \*

(c) *Payments to which section applies*—
(1) In general.—Except as provided in subsection (f), this section shall apply to any payment on account of the sale or exchange of property which constitutes part or all of the sales price and which is due more than 6 months after the date of such sale or exchange under a contract—
(A) under which some or all of the payments are due more than one year after the date of such sale or exchange, and
(B) under which, using a rate provided by regulations prescribed by the Secretary or his delegate for purposes of this subparagraph, there is total unstated interest.
Any rate prescribed for determining whether there is total unstated interest for purposes of subparagraph (B) shall be at least

one percentage point lower than the rate prescribed for purposes of subsection (b)(2).

\* \* \* \* \* \*

(f) *Exceptions and limitations.*—
(1) *Sales price of $3,000 or less.*—This section shall not apply to any payment on account of the sale or exchange of property if it can be determined at the time of such sale or exchange that the sales price cannot exceed $3,000.
(2) *Carrying charges.*—In the case of the purchaser, the tax treatment of amounts paid on account of the sale or exchange of property shall be made without regard to this section if any such amounts are treated under section 163(b) as if they included interest.
(3) *Treatment of seller.*—In the case of the seller, the tax treatment of any amounts received on account of the sale or exchange of property shall be made without regard to this section if no part of any gain on such sale or exchange would be considered as gain from the sale or exchange of a capital asset or property described in section 1231.
(4) *Sales or exchanges of patents.*—This section shall not apply to any payments made pursuant to a transfer described in section 1235(a) (relating to sale or exchange of patents).
(5) *Annuities.*—This section shall not apply to any amount the liability for which depends in whole or in part on the life expectancy of one or more individuals and which constitutes an amount received as an annuity to which section 72 applies.

370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962), holding that, for purposes of calculating taxable gains, a transfer by a husband to a wife of shares of appreciated stock, pursuant to a voluntary property settlement and separation agreement, was a taxable event. There, the Court endorsed our previous decision in Commissioner v. Mesta, 123 F.2d 986 (3d Cir. 1941), see 370 U.S. at 71, 82 S.Ct. 1190; accepted the government's contention that the transaction "resembles a taxable transfer of property in exchange for the release of an independent legal obligation," ibid. at 69, 82 S.Ct. at 1193; and stated that for purposes of determining the amount of gain recognized, "the 'property received' [by the husband] was the release of the wife's inchoate marital rights." Ibid. at 72, 82 S.Ct. at 1194. With this underpinning, the taxpayers would have us construct the conclusion that, inasmuch as capital gains in Mesta and Davis were assessed on the basis of "gain from the sale or other disposition of property", 26 U.S.C. § 1001, Benjamin's 1967 settlement agreement qualified as a "contract for the sale or exchange of property" under 26 U.S.C. § 483(a), thus entitling taxpayers to deductions for unstated interest. Capsulized, the argument is that if the Commissioner treats a property settlement agreement as a taxable event for purposes of recognizing gains under Section 1001 because it is a "sale or other disposition of property," the Commissioner must give a similar agreement like treatment for "unstated interest" purposes under Section 483.

The Commissioner's response takes two tracks. First, in response to the Mesta-Davis argument, he asserts that the issue presented in those cases was not whether the accretion of value to stocks transferred by a husband to his wife in a divorce settlement was taxable; the sole issue was when. The contest in Davis was whether "the economic gain be presently assessed against taxpayer [husband], or should this assessment await a subsequent transfer of the property by the wife?" 370 U.S. at 68, 82 S.Ct. at 1192.[4] Thus viewed, the Commissioner continues, Davis is only an application of the rule that one who transfers appreciated property to satisfy a monetary obligation at the appreciated value will recognize gain to the extent of the appreciation. That is, Davis focused on the marital agreement only as it related to the disposition of securities by the husband; it did not focus on the nature of the wife's participation in the transaction.[5] Second, the Commissioner contends that it is improper to apply Section 483 to written agreements concerning divorce or separation because Congress specified the tax consequences of these agreements in 26 U.S.C. § 71[6] and 26 U.S.C. § 215.[7]

4. The Court concluded that because "inchoate rights granted a wife in her husband's property", 370 U.S. at 70, 82 S.Ct. at 1193; under state law did not amount to co-ownership by husband and wife, the transfer of stock was a transfer of title and ownership and, therefore, taxable at the time of transfer from the husband.

5. Stated otherwise, the distinction is that in Davis the husband was the "seller" or "disposer" of the securities; in the instant case, however, using his analogy, Benjamin would be a "purchaser".

6. Sec. 71. Alimony and Separate Maintenance Payments.
(a) General rule.—
(1). Decree of divorce or separate maintenance.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the

wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

(2). Written separation agreement.—If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital

7. See note 7 on page 1333.

At first blush, taxpayers' analysis appears meritorious. It has the appeal of charging the Commissioner with wanting the best of two worlds: a marital settlement is a "sale or other disposition of property" thereby constituting a taxable event when an assessment of additional tax results, as in a transfer of appreciated stock, but not a "sale or exchange of property" when the husband seeks to obtain a deduction, and thereby a reduction in tax liability. But as one considers the criticism in the context of the Internal Revenue Code as a whole, the initial hue wanes.

Our analysis begins not with the general capital gains statutes which by their terms apply to all transactions involving capital assets, see, e. g., 26 U.S.C. §§ 1001, 1002, 1221, but with the specific provisions Congress has enacted to cover the precise factual complex present in the Fox settlement agreement.

Thus, we find a broad statutory general rule enunciated in 26 U.S.C. § 71(a)(1): if a wife is divorced, her gross income includes "periodic payments" "received after [the] decree in discharge of . . . a legal obligation which, because of the marital or family relationship, is . . . incurred by the husband under the decree or under a written instrument incident to [the] divorce". Had Congress

stopped with the general rule, Juliette would have been charged with receiving income under the Fox agreement and the taxpayers probably would have had the benefit of a deduction. But Congress went further and enacted two significant subsections. Section 71(c)(1) excludes from the definition of "periodic payments" those installment payments which discharge a part of an obligation the principal sum of which is specified in the agreement incident to divorce. Congress also added Section 71(c)(2) which renders the exception in Section 71(c)(1) inoperative when the terms of the agreement permit the principal sum "to be paid . . . over a period ending more than 10 years from the date" of the agreement. In such event, the installment payments are to be treated as "periodic payments" under the general rule of Section 71(a)(1). The corollary to inclusion or exclusion in the recipient wife's gross income of amounts received under an installment payment divorce settlement is set forth in 26 U.S.C. § 215: "[T]here shall be allowed as a deduction [to the husband] amounts includible under section 71 in the gross income of his wife." Thus, includibility determines deductibility.

Having established the statutory groundwork, we turn to the agreement

---

or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly.

\* \* \* \* \* \*

(c) *Principal sum paid in installments.—*

(1). *General rule.*—For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.

(2). *Where period for payment is more than 10 years.*—If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic

payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received.

7. Sec. 215. *Alimony Etc., Payments.*

(a) *General rule.*—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income.

at issue. Only the most naive would assume that astute federal tax planning did not figure in the million dollar cash settlement between Benjamin and Juliette Fox. The Fox agreement appears to have been written with one eye on the typewriter and the other on the Internal Revenue Code.

■ A principal sum was set forth in the agreement which specifically was made contingent upon obtaining the divorce decree. The sum was made payable in installments. Obviously, Juliette Fox insisted that the payments be tax free to her—free of the Scylla of Section 71(a)(1), the general rule imposing tax liability upon the recipient. The payments were also to be made over a period of nine and one-half years—thus freeing Juliette from the Charybdis of Section 71(c)(2), which renders the section's exception inoperative. The agreement steered a course midway through the legal Straits of Messina—safe on the waters of the exception Section 71(c)(1) provides. All of this was "clear and specific" and permissible under the Code. Fashioning a divorce agreement in accordance with tax consequences is an appropriate and legitimate practice. "After all, the parties may for tax purposes act as their best interests dictate . . . ." Commissioner v. Lester, 366 U.S. 299, 306, 81 S.Ct. 1343, 1348, 6 L.Ed.2d 306 (1961).

As noted above, it is now axiomatic that the Code defines deductibility to the husband in terms of includibility of the amounts received in the wife's income. Faber v. Commissioner, 264 F.2d 127, 128 (3d Cir. 1959); Cosman v. United States, 440 F.2d 1017, 1019, 194 Ct.Cl. 656 (1971); 5 J. Mertens, The Law of Federal Income Taxation § 31A.01, at 3–4 (1969). Accordingly, it would follow that appellants would not be entitled to the deduction they claim.

■ And thus we come to the consideration crucial to the resolution of the question before us. We must reject taxpayers' invitation to begin with the statutory language describing "sale or exchange of property" and treat deductions under Section 483 *in vacuo*. Although an analogy may be drawn from the language in the legislation on recognizing gains to that of the imputed interest section, this is of no help to taxpayers because the analogy may not properly proceed further. Since taxpayers claim deductions for parts of payments Benjamin made on account of a divorce-related property settlement agreement, the appropriate starting point for consideration of the deduction perforce must be Section 215. Here, the start is also the finish. By precise terms the Internal Revenue Code has limited the deductions a husband may claim on payments made under Section 71 to the specific limitations of Section 215. The Code goes no further. Nor need we.

Moreover, nothing in the legislative history of Section 483 indicates a congressional design contrary to the result we reach. Nothing in the legislative history discloses that Congress intended, via the vehicle of Section 483, to modify the statutory scheme that had existed for more than twenty years.[8] Rather, an examination of this history discloses that the House and the Senate agreed the purpose of the bill was to eliminate "undesirable" "manipulation of the tax laws"[9] by sellers and purchasers of capital assets under installment sales agreements which did not specifically provide for interest. In articulating the "General reasons" for the section, the Senate stated:

---

8. Section 483 was enacted on February 26, 1964 Pub.L.No.88–272, § 224(a), 78 Stat. 77. Sections 71 and 215, respectively, had been introduced as Sections 22(k) and 23(u) of the Internal Revenue Code of 1939, and added in 1942. *See* 5 J. Mertens, The Law of Federal Income Taxation § 31A.01, at 2 (1969).

9. H.R.Rep.No.749, 88th Cong., 2d Sess., 1964 U.S.Code Cong. & Ad.News at 1381; S.Rep. No.830, 88th Cong. 2d Sess., 1964 U.S.Code Cong. & Ad.News at 1775.

In describing the "manipulation" possible under the then existing law, Congress observed:

an individual may sell a capital asset on the installment basis without making any specific provisions for interest payments on installments. In such cases the full differ-