T.C. Memo. 1997-196


UNITED STATES TAX COURT


LINDA GIBBS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 26551-95.                    Filed April 29, 1997.


<u>John M. Bjornstad</u>, for petitioner.

<u>Albert B. Kerkhove</u> and <u>Mark E. O'Leary</u>, for respondent.


MEMORANDUM OPINION


CARLUZZO, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.  Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the years in issue.  All
Rule references are to the Tax Court Rules of Practice and
Procedure.  Respondent determined deficiencies in petitioner's

1991, 1992, and 1993 Federal income taxes in the amounts of $2,520, $1,699, and $1,232, respectively.

The issue for decision is whether petitioner must include in income interest paid to her by her former spouse pursuant to a decree of divorce.

## Background

This case was submitted fully stipulated. The stipulated facts are incorporated into our findings by this reference. At the time that the petition was filed in this case, petitioner resided in Hartley, Iowa.

On November 20, 1976, petitioner married Bertrum C. Gibbs, Jr. (Mr. Gibbs). During their marriage they opened and operated a convenience store called SuperAmerica. As best as can be determined from the record, SuperAmerica was organized as a sole proprietorship.

By Judgment and Decree dated February 12, 1990 (the divorce decree), the Iowa District Court for O'Brien County (the district court) dissolved the marriage between petitioner and Mr. Gibbs. In connection with their divorce, petitioner and Mr. Gibbs agreed upon the division of much of the marital property; however, the value and division of SuperAmerica was contested in the divorce proceeding. After determining the value of SuperAmerica to be $250,000, the district court concluded that Mr. Gibbs should retain ownership of it upon the payment of $122,500 to petitioner for her equitable interest in the property. Specifically, the

district court concluded and found, as stated in the divorce

decree:

>    Because in this case * * * [petitioner and Mr.
> Gibbs] have worked extremely hard and have contributed
> their joint efforts towards the accumulation of
> property, it is the feeling of the court that an equal
> division of their property is justified. * * * [Mr.
> Gibbs] should certainly retain ownership of the
> SuperAmerica station. He should, however, pay to * * *
> [petitioner] a sum of money sufficient to essentially
> equalize the property division. To equalize the
> division, * * * [Mr. Gibbs] should pay to * * *
> [petitioner] the sum of $122,500. It would be
> extremely difficult for * * * [Mr. Gibbs] to pay said
> money in cash, and, consequently, the decree will
> provide for payment of $22,500 at this time with the
> balance to be paid over a ten-year period, <u>with
> interest at 9 percent</u>. Equal installments of $15,583
> will be required and will be ordered to be paid
> annually. To secure said payments, * * * [Mr. Gibbs]
> shall provide * * * [petitioner] with a mortgage on the
> property. [Emphasis added.]

Based upon the foregoing conclusions and findings, in the

divorce decree, the district court ordered:

> [Mr. Gibbs] shall pay * * * [petitioner] the sum of
> $122,500. Payment shall be $22,500 on or before March
> 15, 1990, with the balance to be paid in ten
> installments of $15,583 each, the first of which will
> be due March 15, 1991, with payments continuing
> annually for nine years, making ten installment
> payments in all. * * * [Petitioner's] attorney shall
> prepare a note evidencing said payments and a mortgage
> covering the SuperAmerica property, which shall be
> executed by * * * [Mr. Gibbs] and delivered to * * *
> [petitioner's] attorney.

In accordance with the divorce decree, in each of the years

in issue, Mr. Gibbs paid $15,583 to petitioner. The parties

stipulated that the payments consisted of the following:[1]

---

[1] We note that the sum of the interest and principal for each year does not equal $15,583. We assume that the $1 discrepancy is the result of rounding.

| Year | Principal | Interest |
|------|-----------|----------|
| 1991 | $6,582 | $9,000 |
| 1992 | 7,174 | 8,408 |
| 1993 | 7,820 | 7,762 |

Petitioner, who computed her Federal income tax liabilities for the years in issue using the cash receipts and disbursements method of accounting, did not include any of the above-mentioned payments, or portions thereof, in the income she reported on her 1991, 1992, or 1993 Federal income tax returns.

In the notice of deficiency, respondent determined that the interest portion of each payment petitioner received from Mr. Gibbs pursuant to the divorce decree must be included in income in the year received and adjusted her income for each year in issue accordingly.

Discussion

Unless specifically excluded, section 61 defines gross income to mean income from whatever source derived, including interest. Sec. 61(a)(4). Normally, interest is defined to include a payment made to compensate for the delay in receipt of an amount otherwise due. Aames v. Commissioner, 94 T.C. 189, 193 (1990). In many cases, interest is paid and received pursuant to a contractual arrangement, but a taxpayer can realize interest income from nonconsensual withholding of property as well. 320 East 47th St. Corp. v. Commissioner, 243 F.2d 894, 896 (2d Cir. 1957), revg. on another issue 26 T.C. 545 (1956).

For Federal income tax purposes, interest is generally treated differently than the underlying obligation to which it relates. Wheeler v. Commissioner, 58 T.C. 459, 461-462 (1972). This is obvious in the typical debtor-creditor relationship in which principal repayments do not constitute income to the lender, but interest payments do. Different treatment, however, also occurs in other contexts. For example, in Aames v. Commissioner, supra, we held that the interest portion of a payment received by the taxpayer in connection with a malpractice claim against the taxpayer's attorney must be included in the taxpayer's income even though the award itself was excluded from income under section 104(a)(2). In accord is Kovacs v. Commissioner, 100 T.C. 124, 129-130 (1993), affd. without published opinion 25 F.3d 1048 (6th Cir. 1994), which held that interest statutorily imposed upon a judgment awarded to the taxpayer for personal injuries was not excluded from the taxpayer's income under section 104(a)(2) even though the damages were. Similarly, in Tiefenbrunn v. Commissioner, 74 T.C. 1566 (1980), we held that interest received by the taxpayer in connection with a condemnation award must be included in the taxpayer's income even though the gain that the taxpayer realized as a result of the condemnation was subject to the nonrecognition provisions of section 1033. Generally, any portion of a judgment that compensates a taxpayer for the delay in receipt, or lost

use, of the taxpayer's money constitutes interest and is taxable as such. Kieselbach v. Commissioner, 317 U.S. 399, 403 (1943).

The parties stipulated that a portion of each payment petitioner received from Mr. Gibbs represented interest. The stipulation on this point is certainly supported by the underlying facts. The portion of each payment characterized by the parties as interest is not only in accord with the divorce decree, but is in accord with the traditional purpose for which interest is paid, or received, as well. See Kieselbach v. Commissioner, supra; Aames v. Commissioner, supra.

Considering the foregoing, it would appear that the issue here under consideration should be resolved in respondent's favor based upon section 61(a)(4) and the above-cited authorities. However, the circumstances under which the interest was paid to petitioner and the nature of her arguments oblige us to comment further.

Petitioner points out that, incident to her divorce from him, the payments she received from Mr. Gibbs were for her share of SuperAmerica. That being the case, she argues that the payments are excludable from her income under section 1041. Pursuant to section 1041(a), no gain or loss is recognized on the transfer of property from an individual to a spouse, or former spouse, if the transfer is incident to divorce. See Balding v. Commissioner, 98 T.C. 368, 370 (1992).

We begin by noting that section 1041 does not provide for the exclusion of income; it provides for the nonrecognition of gain or loss under the circumstances described therein. As in the case of other nonrecognition sections, the Federal income tax consequences of a transaction described in section 1041 are deferred. Also similar to other nonrecognition sections, the tax deferral is effectuated through the treatment of the basis of the property involved in the underlying transaction. Sec. 1041(b). For a discussion of the background, purpose, and scope of section 1041, see Balding v. Commissioner, supra at 370-372.

Petitioner relies upon Balding in support of her position regarding the application of section 1041. In Balding, we held that payments received over a 3-year period by the taxpayer in settlement of her claim to her former husband's military retirement benefits were subject to nonrecognition treatment under section 1041. Petitioner argues that because the payments in Balding were spread out over 3 years, a portion of each payment must have included unstated interest that the taxpayer was not required to include in her income. Because we disagree with petitioner's presumption that unstated interest was involved in Balding, we find no support in that case for her section 1041 argument. There is nothing in Balding that suggests that interest was involved, or that interest paid to a spouse or former spouse in connection with the division of marital property incident to a divorce would be subject to section 1041.

In this case, incident to her divorce from Mr. Gibbs, petitioner transferred her interest in SuperAmerica to him for $122,500, a transaction that falls squarely within the scope of section 1041. Presumably because it is not important here, the record contains no evidence establishing petitioner's basis, if any, in SuperAmerica. See secs. 1011 and 1012. Consequently, it is unknown whether petitioner realized a gain as a result of the transfer. To the extent that she did, respondent has not proposed that any such gain be recognized.

Although petitioner recognizes, as reflected in the stipulation of facts, that each payment consisted partially of principal and partially of interest, her section 1041 argument makes no such distinction, but is directed to the entire amount of each payment. To the extent that petitioner did realize a gain from the transfer of her interest in SuperAmerica to Mr. Gibbs, presumably some part of that gain is included in the principal portion of each payment that petitioner received from him. However, the issue in this case has nothing to do with any gain that petitioner might have realized from the transfer. Petitioner mistakenly equates the interest portion of each installment payment with any gain presumably included in the principal portion. The interest petitioner was paid pursuant to the divorce decree, and the gain she might have realized upon the transfer of SuperAmerica to Mr. Gibbs, are two distinct items

that give rise to separate Federal income tax consequences.  The latter item might be subject to section 1041; the former is not.

As noted above, although under certain circumstances specific statutes control the Federal income tax consequences of certain awards, judgments, or payments, the statutes do not necessarily control the Federal income tax consequences of interest paid to the taxpayer in connection with such awards, judgments, or payments.  See Kovacs v. Commissioner, 100 T.C. 124 (1993); Aames v. Commissioner, 94 T.C. 189 (1990); and Tiefenbrunn v. Commissioner, 74 T.C. 1566 (1980).  With respect to interest, we see no reason why transactions subject to section 1041 should be treated any differently than transactions subject to sections 104(a)(2) and 1033.  Consequently, we conclude that section 1041 has no application to the interest petitioner received from Mr. Gibbs during the years in issue, and hold that such interest must be included in her income in the year received.

Petitioner suggests that if she is required to include the interest in her income, taxpayers receiving "unstated" interest under similar circumstances will receive an unfair tax advantage. We view the hypothetical problem presented in her argument to be one of proof rather than principle.  We can envision a case where the distinction between the payment of interest and the payment of the underlying obligation is not clearly drawn.  In such a case the facts and circumstances might have to be examined to

determine whether, although unstated, an interest factor was involved in a payment, or a series of installment payments, in connection with a transaction otherwise subject to section 1041. This is not such a case. Here the parties have stipulated that a portion of each payment constituted interest.

We have considered petitioner's other arguments and find them unpersuasive. Although we agree with petitioner's argument that the interest payments do not constitute alimony under section 71, and therefore, are not includable in income as such, we disagree with her contention that unless the payments constitute alimony they need not be included in her income. Nothing in section 71 suggests that a payment from one spouse to another constitutes income only if the payment satisfies the definition of alimony contained in that section. In support of her argument on this point petitioner relies upon Fox v. Commissioner, 510 F.2d 1330 (3d Cir. 1975); Gammill v. Commissioner, 73 T.C. 921 (1980), affd. 710 F.2d 607 (10th Cir. 1982); and McCormick v. Commissioner, T.C. Memo. 1987-418. Each of those cases involves attempts by the taxpayer to deduct, as imputed interest under section 483, portions of installment payments to a former spouse that were made pursuant to a divorce settlement that did not call for interest payments. In those cases, it was determined that section 483 did not apply to property settlements made incident to divorce, and the taxpayers were not entitled to deductions for interest.

Petitioner seems to suggest that these cases stand for the proposition that section 215, which allows a deduction for alimony or separate maintenance payments, provides the exclusive means for deducting a payment from one spouse to another, if the payment is made pursuant to a divorce. From this petitioner concludes that section 71 must be the exclusive means by which one spouse can receive income from the other. Neither the premise nor the conclusion is correct. As previously indicated, gross income is broadly defined to include income from any source derived. Sec. 61(a); Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955). Deductions, on the other hand, are a matter of legislative grace. A taxpayer claiming a deduction must establish the statutory basis for the deduction and demonstrate that all of the requirements of the relevant statute have been satisfied. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). The cases relied upon by petitioner focus upon the allowance of deductions claimed by the payor/taxpayers rather than the characterization of the payments to the recipients.

Lastly, petitioner argues that it would be unfair to require her to include the interest payments in her income. She maintains that she will have received less than she was entitled to receive under the divorce decree if the interest payments must be included in her income. Separate and apart from our inability to grant relief to a taxpayer because the imposition of a Federal income tax law results in some harshness or unfairness, Estate of

Cowser v. Commissioner, 736 F.2d 1168, 1171-1174 (7th Cir. 1984), affg. 80 T.C. 783, 787-788 (1983), we fail to appreciate the unfairness about which petitioner complains.  Pursuant to the divorce decree, $100,000 of the amount awarded to her was to be paid in installments.  Had petitioner received the entire $100,000 at the time of the divorce and invested the fund in an interest-bearing account at 9 percent (there is nothing in the record that suggests that 9 percent was not an appropriate or fair rate of interest at the time), most likely she would be in exactly the same posture that she is in as a result of our holding.  Although the question is not before us, we think it highly unlikely that had petitioner received and deposited the entire $100,000 in an interest-bearing account, or made some other type of income-producing investment, the income earned from the account or investment should be excluded from income merely because the source of the deposit or investment was a transaction subject to section 1041.

To reflect the foregoing,

Decision will be

entered for respondent.