Linda Karen Brownlow CRAVEN,
Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civil No. 2:98–CV–01–WCO.

United States District Court,
N.D. Georgia,
Gainesville Division.

June 23, 1999.

---

David DeCoursey Aughtry, Chamberlain Hrdlicka White Williams & Martin, Atlanta, GA, Joe W. Gerstein, Office of Joe W. Gerstein, Doraville, GA, for plaintiff.

Ann Carroll Reid, GaBar GovAtty, Sean M. O'Connor, phv-USDOJ, U.S. Department of Justice, Tax Division, Washington, DC, for defendant.

## ORDER

O'KELLEY, Senior District Judge.

This case is before the court for consideration of defendant's motion for summary judgment [14–1] and plaintiff's motion for summary judgment [17–1]. After careful consideration and review, the court grants in part and denies in part the motions for the reasons stated herein.

## FACTS[1]

Plaintiff brought this suit against the United States for recovery of income taxes. Plaintiff married Billy Joe Craven on December 17, 1966 and later formed a corporation called Craven Pottery, Inc. (the "Corporation") with her husband on or about June 12, 1975. Plaintiff owned 47 percent of the outstanding shares of the Corporation, and Billy Joe Craven owned 51 percent of the shares. Plaintiff claims that Mr. Craven dominated all aspects of the business and expected his wife to acquiesce in his decisions. After plaintiff quit working at the Corporation in April of 1987, plaintiff asserts that Mr. Craven committed several questionable acts, including converting plaintiff's paychecks, electing officers and directors for the Corporation without notice to the plaintiff as shareholder, increasing his own salary, and paying personal expenses with company funds.

Plaintiff filed suit in the Superior Court of Hall County, Georgia on March 31, 1989. *See Linda Karen Brownlow Craven v. Billy Joe Craven and Craven Pottery, Inc.,* Civ. No. 89–CV–8395–C (Sup.Ct. of Hall County). In this suit, plaintiff sought a divorce from Billy Joe Craven and sought the equitable distribution of marital property. In separate counts against the Corporation and Billy Joe Craven, plaintiff alleged the illegal appropriation of plaintiff's salary. Plaintiff was obligated under Georgia law to name the Corporation for the conversion of these funds. Plaintiff also requested the appointment of a receiver for the Corporation and sought in her prayer for relief that the corporate assets be sold and divided between the parties. The case was settled in a three-way settlement among plaintiff, Mr. Craven, and the Corporation in 1991. As part of the Settlement Agreement, plaintiff, Mr. Craven, and the Corporation agreed to the redemption of plaintiff's shares in the Corporation. Plaintiff was at all times represented by attorneys. The parties dispute whether Mr. Craven had a contractual obligation to buy plaintiff's shares in the Corporation.

A Final Judgment and Decree granting plaintiff and Mr. Craven a divorce was entered on January 11, 1991. The Final Judgment and Decree incorporated a Settlement Agreement dated January 11, 1991, which settled all matters, questions, and controversies as to alimony, division of property, attorney's fees, support and maintenance, and all other marital claims and rights the couple had against each other. The Settlement Agreement also settled all matters, questions, and controversies raised in the civil action between the plaintiff and the Corporation. Each party to the Settlement Agreement acknowledged that he or she was represented by an independent attorney of his or

---

1. Because defendant has failed to respond to plaintiff's statement of material facts, the court will deem the statements in plaintiff's statement to be admitted. *See* LR 56.1B, NDGa.

her own selection in negotiation and preparation of the Settlement Agreement. The Settlement Agreement was fully explained to each party by their respective attorneys. Each party was aware of its contents and legal effect, had a clear understanding of and complete accord with the terms of the Settlement Agreement, and viewed it as "fair, just, and equitable under all the circumstances."

At issue in this case is the portion of the Settlement Agreement in which Plaintiff agreed to transfer all of her shares of stock in the Corporation to the Corporation through redemption. Plaintiff asserts that her sole reason for the redemption was the divorce. The Corporation agreed to pay to the plaintiff a redemption price of $4,800,000 for plaintiff's 47 percent in the Corporation. This payment was not due for another ten to twenty years. Plaintiff asserts that the present value of the redemption price was no more than $1.7 million. In addition the Settlement Agreement provided: "The settlement and division of assets and properties and liabilities between the parties detailed above with an express desire that it be equitable ... Each party shall pay and be responsible for any and all income or transfer taxes arising from the ultimate sale or disposition of the property referred to hereinabove." [2]

Pursuant to the Stock Redemption Agreement ("Redemption Agreement") incorporated into the Settlement Agreement, the parties agreed that the Corporation would issue a Promissory Note ("Note") to plaintiff and make payments as follows:

a. 120 equal payments of $15,000, payable ... each month for 120 consecutive months, commencing July 10, 2000.

b. A lump sum payment of $1,000,-000.00, due on June 10, 2000.

c. A lump sum payment of $1,000,-000.00, due on June 10, 2005.

d. A lump sum payment of $1,000,-000.00 due on June 10, 2010.

The face amount of the Note was $4,800,-000. According to calculations by the Corporation's attorneys, the present value of the Note at the date of its issuance, using an interest rate of 7.5% was $1,435,580.22. The Redemption Agreement expressly provided:

The parties agree that the above payments are without stated interest. Corporation agrees to timely prepare and deliver to Seller for each calendar year an IRS Form 1099–INT (or other appropriate IRS form) to report to Seller the appropriate interest portion of the payments made under the Note to the Seller (determined in accordance with the applicable regulations promulgated pursuant to Internal Revenue Code Section 1274) during such calendar year, from which Seller shall prepare her income tax returns for such calendar year.

The Redemption Agreement also provided that the Corporation could prepay the Note. In the case of prepayment, the Corporation could prepay the present value of the promissory note by applying a 7.5 percent annual interest rate as the appropriate discount rate.[3] The prepayments would apply first to the amounts due in the year 2010, then to the amounts due in the year 2005, and then to the amounts due in the year 2000. Pursuant to the Redemption Agreement and resolutions in the Consent, the Corporation issued the plaintiff a Note in the amount of $4,800,000, dated June 27, 1990. Mr. Craven guaranteed the Note by a Contract of Guaranty

---

2. Plaintiff makes several objections based on her interpretation of the clause. Pursuant to Local Rule 56.1B, the court will not consider statements in the forms of issues or legal conclusions. Plaintiff does not dispute that the Settlement Agreement contains this provision.

3. Plaintiff asserts that either the Corporation or Mr. Craven could prepay the Note according to the terms of the Settlement Agreement regarding certain real estate used to secure the debt.

("Guaranty"). In the Guaranty, Mr. Craven expressly acknowledged that the terms of the Note were of "direct interest, benefit and advantage" to him as the sole remaining shareholder of the Corporation. When the Settlement Agreement was read into the record before Judge Clyde Henley, the record reflected Mr. Craven was personally responsible for making any payments not paid by the Corporation by the tenth of each month. In addition, the record reflected that Mr. Craven personally guaranteed all payments.

The Settlement Agreement also provided for the equitable division of the 48.72 acres of property located in Commerce, Georgia that was contiguous to the Corporation's retail and wholesale operations. Settlement Agreement ¶ 5. Plaintiff was required to quitclaim any interest she had in the acreage, and in return Mr. Craven executed a Deed to Secure Debt for the property to secure the Note. The Settlement Agreement allowed either Mr. Craven or the Corporation to pay plaintiff $10,000 per acre for a release of acreage from the security deed. These payments constituted prepayments to plaintiff under the Stock Redemption Agreement. The Settlement Agreement also contained similar provisions for other pieces of property.

Plaintiff has received four prepayments. Mr. Craven personally paid the first prepayment, and the Corporation paid the rest. Either Mr. Craven or Cravens Property, L.P. is the new owner and grantee for each property.

Relying on the terms of the Redemption Agreement, the Corporation sent to plaintiff IRS Forms 1099–INT for the years 1992, 1993, and 1994 reflecting imputed interest on the Note. The interest reported on the Forms 1099 were $128,566.28 for 1992, $134,139.06 for 1993, and $108,923.00 for 1994.

Plaintiff filed federal income tax returns for the years 1992, 1993, and 1994 which did not report as taxable income the imputed interest on the Note, nor did the returns report as income capital gains from the redemption of plaintiff's stock in the Corporation. Plaintiff filed disclosure statements which stated that the interest reflected on the Forms 1099–INT was not taxable (a) because Mrs. Craven is a cash basis taxpayer; (b) the interest was not paid; and (c) any interest imputed was nontaxable under Internal Revenue Code Section 1041 as a transfer of property pursuant to a divorce. Plaintiff stated therein: "Taxpayer was forced to sell her stock in Craven Pottery, Inc. pursuant to a divorce. Craven Pottery, Inc. incorrectly issued a Form 1099 INT."

The Internal Revenue Service ("IRS") examined the plaintiff's returns and determined that plaintiff had capital gains from the sale of the Corporation's stock based on the principal of the Corporation's prepayments on the Note in 1992 and 1993, in the amounts of $187,922 and $285,709, respectively. The IRS also determined that plaintiff had interest income from the Note of $128,566.28 for 1992, $134,139.06 for 1993, and $108,923.00 for 1994. Finally, the IRS made adjustments to itemized deductions and exemptions based on the increase of adjusted gross income.[4]

On June 11, 1996, the IRS issued a Notice of Deficiency to plaintiff. This notice stated that plaintiff owed $95,474 for 1992, $135,616 for 1993, and $41,771 for 1994. The IRS assessed taxes and interest based on the deficiencies. Plaintiff paid the full amount assessed on or about October 30, 1996. Plaintiff timely filed claims for refund on or about November 1, 1996. She alleged that she did not receive capital gains from the transfer of her stock in the Corporation because the transfer was incident to divorce and was a transfer on behalf of her former spouse. She also

---

**4.** Plaintiff objects to the IRS determinations without setting out what the correct amounts

should be.

alleged in her claim that she did not earn interest on the debts related to the transfer of the stock because the Note did not call for the payment of interest; no interest could be imputed to the transaction because the transfer qualified for non-recognition under 26 U.S.C. ¶ 1041; and "as a cash-basis taxpayer, she will receive no payments under the debt for twenty years." Plaintiff also disputed adjustments made to itemized deductions and exemptions.

## SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Only those claims for which there is no need for a factual determination and for which there is a clear legal basis are properly disposed of through summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

It is well-settled that a court evaluating a summary judgment motion must view the evidence in the light most favorable to the non-movant. *See, e.g., Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988); *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir.1986), *reh'g denied*, 815 F.2d 66 (11th Cir.1987). To survive a motion for summary judgment, the non-moving party need only present evidence from which the trier of fact might return a verdict in his favor. *Samples*, 846 F.2d at 1330. However, Rule 56, "[b]y its very terms, ... provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in origi-

nal). The materiality of facts is governed by the relevant substantive law in the case. *Id.* at 248, 106 S.Ct. 2505. A dispute is genuine if the evidence is such that the factual issues "may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505.

Consideration of a summary judgment motion does not lessen the burden on the non-moving party: the non-moving party still bears the burden of coming forth with sufficient evidence on *each element* that must be proved. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990) (emphasis in original); *see Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. In *Earley*, the Eleventh Circuit further emphasized:

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.... Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case.... In such circumstances, there can be no genuine issue of material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.... If the evidence is *merely colorable*, or is *not significantly probative*, summary judgment may be granted.

*Id.* (emphasis in original) (citations omitted).

## DISCUSSION

■ Before the court are plaintiff's and defendant's cross motions for summary judgment. Because the motions require the same analysis, this court will consider both motions concurrently. Plaintiff first asserts that her motion for summary judgment should be granted because defendant filed its response out of time. Although defendant untimely filed its response, the court finds that plaintiff has suffered no

harm. Indeed, plaintiff filed a reply to defendant's response. Because justice demands consideration of the merits of this case, the court will exercise its discretion and will consider defendant's responsive brief. *See* LR 7.1F, NDGa (giving the district court discretion to decline to consider any motion or brief that fails to conform to the local rules); *McLaughlin v. LaGrange*, 662 F.2d 1385 (11th Cir.1981) (noting that the district court considered plaintiffs' untimely response to defendants' motion and affirming the district court's order).

There are two primary issues in this case. First, the court must consider whether plaintiff's stock redemption receives non-recognition status under section 1041 of the Internal Revenue Code. Second, the court must determine whether interest is imputed on the Note issued to plaintiff by the Corporation under section 1274 of the Internal Revenue Code and, if so, the tax consequences of the imputed interest.

First, the court rules that the stock redemption should receive non-recognition status under section 1041 as a transfer to a former spouse that is incident to a divorce. Internal Revenue Code broadly defines the term "gross income" as "all income from whatever source derived." I.R.C. § 61(a). Gains from the redemption of stock are generally included in the gross income of the redeemed taxpayer. *See* I.R.C. § 302. However, section 1041 defers the tax consequences of transfers between spouses. In general, "[n]o gain or loss shall be recognized on a transfer of property from an individual to (or in trust for the benefit of)—(1) a spouse, or (2) a former spouse, but only if the transfer is incident to the divorce." I.R.C. § 1041(a). Instead, the transfer is treated as a gift, and the transferee spouse takes the adjusted basis of the transferor. I.R.C. § 1041(b).

This deferral can also apply to transfers from a spouse to a third party made "on behalf of" a spouse or former spouse. Temp.Treas.Reg. § 1.1041–1T(c) (Q & A9).[5] The temporary regulation states in part:

There are three situations in which a transfer of property to a third party on behalf of a spouse (or former spouse) will qualify under section 1041, provided all other requirements of the section are satisfied. The first situation is where the transfer to the third party is required by a divorce or separation instrument. The second situation is where the transfer to the third party is pursuant to the written request of the other spouse (or former spouse). The third situation is where the transferor receives from the other spouse (or former spouse) a written consent or ratification of the transfer to the third party.

Plaintiff asserts that because her stock redemption was pursuant to her divorce agreement, the transfer qualifies for non-recognition status. *Arnes v. United States*, 981 F.2d 456 (9th Cir.1992). Defendant contends that plaintiff's stock redemption was not on behalf of her former husband and outside the scope of section 1041 and the temporary regulations. *Blatt v. Commissioner*, 102 T.C. 77, 1994 WL 26306 (1994); *see C. I. R. v. National Alfalfa Dehydrating & Milling Corp.*, 417 U.S. 134, 147, 94 S.Ct. 2129, 40 L.Ed.2d 717 (1974) (holding that a taxpayer has discretion in structuring a transaction but is bound by its tax consequences).

In *Arnes*, 981 F.2d at 456, the Ninth Circuit held that a stock redemption pursuant to a divorce agreement warranted non-recognition status under section 1041 as a transfer on behalf of a spouse. The husband and wife had formed a corporation to operate a McDonald's franchise. Because of McDonald's policy requiring

---

5. On August 30, 1984, a temporary treasury regulation was issued interpreting Section 1041. T.D. 7973 (1984–2 C.B. 170). Permanent regulations have not yet been issued.

However, these temporary regulations are given the same weight as final regulations. *Godlewski v. Commissioner*, 90 T.C. 200, 206 n. 8, 1988 WL 7907 (1988).

100% ownership by the owner/operator, the couple could not exercise joint ownership in the franchise after the divorce. Thus, pursuant to the divorce agreement, the wife surrendered her shares in the corporation for a certain amount of money.

The *Arnes* court first noted that "a transfer is considered to have been made 'on behalf of' someone if it satisfied an obligation or a liability of that person." *Id.* at 459. Reasoning that the divorce property settlement required the husband as the remaining shareholder to redeem the stock, the court held that it was the husband's obligation to purchase his wife's stock, not the corporation's. Also, the court noted that the husband personally guaranteed the corporation's note to his wife and that under state law, the wife could sue her husband for payment without suing the corporation. Because the wife's transfer to the corporation relieved the husband of an obligation, the redemption constituted a benefit to him. The court then treated the wife's transfer of stock as a constructive transfer to the husband who then transferred the stock to the corporation.

In *Blatt,* 102 T.C. at 77, the tax court reached the opposite result and disagreed with *Arnes,* 981 F.2d at 456. *Blatt,* 102 T.C. at 82. The *Blatt* court held that any benefit to the other spouse, such as relief from a possible claim under marital property distribution laws, does not mean that the stock redemption was on behalf of the other spouse. *Id.* The court distinguished *Arnes* on four grounds. First, the McDonald's corporation in *Arnes* required complete ownership of a franchise by an owner/operator following the divorce. Second, the husband in *Arnes* was required to become the sole owner/operator. Third, the husband in *Arnes* personally guaranteed the corporation's obligation. Fourth, *Blatt* did not arise in a community property state.

■ The instant case is more similar to *Arnes* than *Blatt.* Considering the Settlement Agreement as a whole, the court

finds that the redemption of plaintiff's stock satisfied Mr. Craven's obligation under Georgia law to equitably divide the marital property pursuant to the divorce. *See Stokes v. Stokes,* 246 Ga. 765, 771, 273 S.E.2d 169 (1980); *Hendrix v. Hendrix,* 224 Ga. 662, 663, 163 S.E.2d 917 (1968). The form and the substance of the transaction support plaintiff's characterization. *Cf. Bradley v. United States,* 730 F.2d 718 (11th Cir.1984) (holding that as a general rule taxpayers cannot adopt a certain form for their transactions and then argue that the substance should control the tax consequences absence a showing of fraud, mistake, undue influence, or duress).

The Settlement Agreement and the documents incorporated into the Agreement oblige both the Corporation and Mr. Craven to discharge all responsibilities and acts required by the Redemption Agreement. Settlement Agreement ¶¶ 3, 4. In addition, the Settlement Agreement intertwines the division of certain real estate owned by plaintiff and Mr. Craven with prepayment of the debt incurred by the Corporation as a result of the stock redemption. Settlement Agreement ¶¶ 5, 6. Moreover, the Note was secured by deeds on this marital property. *Id.* Mr. Craven had the option to prepay the Note issued by the Corporation. *Id.*

Additionally, Mr. Craven personally guaranteed the Note, expressly acknowledging that the "terms of the Note are and will be of direct interest, benefit and advantage to [Mr. Craven] as the sole remaining shareholder of Craven Pottery, Inc." Contract of Guaranty. Under Georgia law, guarantors are jointly and severally liable with their principal unless the contract provides otherwise. O.C.G.A. § 10–7–1; *Holland v. Holland Heating & Air Conditioning Inc.,* 208 Ga.App. 794, 795, 432 S.E.2d 238 (1993). Because Mr. Craven in his Contract of Guaranty "unconditionally guarantees" full and prompt payment of the indebtedness evidenced by the Note, he is considered jointly and severally liable for the indebtedness incurred

by the Corporation to plaintiff. Thus, like the settlement agreement in *Arnes,* the Cravens' Settlement Agreement allowed for the redemption of plaintiff's stock to satisfy Mr. Craven's marital obligations in form and in substance.

Defendant suggests that because Mr. Craven could have recovered from the Corporation if the Corporation defaulted on the Note, his obligation on the Note is not equal to that of the Corporation. Def. Resp. at 4. The court agrees that becoming a guarantor of a corporate indebtedness does not automatically mean that the corporation is acting on behalf of the guarantor. However, where, as in this case, the corporation is closely held, one spouse is the dominant shareholder, president, and director of the corporation, the spouse unconditionally guarantees the corporation's obligation to his wife, and the obligation arises out of an attempt by the wife to force the sale and division of corporate assets pursuant to a divorce, the court finds that the stock redemption was on behalf of the spouse.

In addition, the court rejects defendant's argument that Temporary Treasury Regulation § 1.1041–1T(c) improperly expands the scope of section 1041. Instead, the court finds that the temporary regulation is consistent with the long-standing principle in tax law that the court may consider the substance over the form of a transaction. *See Arnes,* 981 F.2d at 458 (explaining that the temporary regulation clarifies the particular situations when a transaction is in substance a transfer on behalf of a spouse or former spouse); *Bradley,* 730 F.2d at 720 ("It is well settled law that the Commissioner of the Internal Revenue Service, in determining income tax liabilities, may look through the form of a transaction to its substance."); *but see Arnes v. Commissioner of Internal Revenue,* 102 T.C. 522, 535, 1994 WL 110824 (1994) (Beghe, J., concurring) ("Even though a temporary regulation has the same dignity as any other interpretative regulation on the subject that is fairly within its ambit, ... its temporary character also tells us that it should not be extended by implication beyond the area with which it purports to deal").

In addition, defendant argues that because Mr. Craven cannot be considered to have received a constructive dividend, the stock redemption did not occur on his behalf. However, the court has already ruled that the stock redemption occurred on behalf of Mr. Craven, not because he received a constructive dividend, but because of his obligations under Georgia law to equitably divide his marital property upon divorce. Furthermore, the court finds that whether Mr. Craven received a constructive dividend is a separate issue that is not properly considered in an action where Mr. Craven is not a party. *See Blatt,* 102 T.C. at 529 (distinguishing action by wife to gain non-recognition status for stock redemption and deficiency action against husband). Thus, the court expresses no opinion on whether Mr. Craven has received a constructive dividend and thus may be responsible for the taxes.

Accordingly, the court rules that no genuine issue of material fact exists as to whether plaintiff's stock redemption qualifies for non-recognition status under section 1041. Summary judgment is granted for the plaintiff and denied for the defendant on this claim.

Second, with respect to whether plaintiff incurred taxes based on the imputed interest on the Note, the court rules that plaintiff is liable for those taxes. In her complaint, plaintiff alleged that she should not be liable for taxes on the interest imputed from the Note because the transfer qualified for non-recognition status under section 1041, the Note did not call for the payment of interest, and plaintiff is a cash-basis taxpayer. Defendant moved for summary judgment on the three theories. In her motion for summary judgment and in her response to defendant's motion, plaintiff only addressed whether the transfer qualified for non-recognition under section 1041. Accordingly, the court deems

that the issues of whether the Note called for the payment of interest and whether plaintiff's status as a cash-basis taxpayer precludes taxation of imputed interest are abandoned. *See* LR 7.1B, NDGa ("Failure to file a response shall indicate that there is no opposition to the motion."); *McKenna v. County of Clayton, State of Georgia,* 657 F.Supp. 221, 225 (N.D.Ga.1987).

Relying on sections 1271 through 1274 of the Internal Revenue Code, defendant asserts that interest is correctly imputed and taxable under the Note. The court first notes that the finding that the underlying obligation is not recognized under section 1041 does not preclude a different treatment for any imputed interest. *See Wheeler v. Commissioner,* 58 T.C. 459, 461, 1972 WL 2577 (1972) (treating portion of the verdict relating to compensation for building as a capital gain and the remainder as interest, which is taxed as ordinary income); *Gibbs v. Commissioner,* 73 T.C.M. (CCH) 2669, T.C.M. (RIA) 97196 (1997) ("For Federal income tax purposes, interest is generally treated differently than the underlying obligation to which it relates.") "Generally, any portion of a judgment that compensates a taxpayer for the delay in receipt, or lost use, of the taxpayer's money constitutes interest and is taxable as such." *Gibbs,* 73 T.C.M. (CCH) at 2669.

Interest, however, does not need to be expressly stated to be taxable. In *United States v. Midland–Ross Corp.,* 381 U.S. 54, 57–58, 85 S.Ct. 1308, 14 L.Ed.2d 214 (1965), the Supreme Court held that "[e]arned original issue discount serves the same function as stated interest" and should be taxed like stated interest. The Court explained: "The $6 earned on a one-year note for $106 issued for $100 is precisely like the $6 earned on a one-year loan of $100 at 6% stated interest." *Id.* at 58, 85 S.Ct. 1308.

Section 1272 requires the holder of any debt instrument having original issue discount issued after July 1, 1982 to include in gross income an amount equal to the sum of the daily portions of the original issue discount for each day during the taxable year on which the holder held the debt instrument. I.R.C. § 1272(a)(1). "Original issue discount" is defined as the excess of the stated redemption price at maturity over the issue price. I.R.C. § 1273. Determination of the issue price of a debt instrument without an adequate stated interest is governed by section 1274, which states that the issue price is the imputed principal amount. I.R.C. § 1274(a)(2). In general, the imputed principal amount of any debt instrument equals the sum of the present values of all payments due under the debt instrument. I.R.C. § 1274(b)(1).

Plaintiff asserts that interest is not properly imputed on the Note because the underlying obligation was entered into pursuant to a divorce agreement, and section 1041 provides for the non-recognition of transfers made between spouses pursuant to a divorce agreement.[6] *See Fox v. United States,* 510 F.2d 1330 (3d Cir.1975); *Gammill v. Commissioner,* 73 T.C. 921, 1980 WL 4491 (1980), *aff'd,* 710 F.2d 607 (10th Cir.1982); *McCormick v. Commissioner of Internal Revenue,* T.C.Memo. 1987–418 (1987). The court finds these cases to be distinguishable. First, these cases do not address whether section 1274 applies to payments made pursuant to a divorce agreement. Instead, these cases consider whether a spouse is entitled to a deduction under section 483 of the Internal Revenue Code for payments made to his former spouse pursuant to a property settlement in a divorce agreement and held that interest was not properly imputed. *See Fox,* 510 F.2d at 1334; *Gammill,* 73 T.C. at 930, 1980 WL 4491; *McCormick,*

---

6. Plaintiff originally relied on Treas.Reg. 1.1274–1(b)(iii) which provides that the original issue discount rules do not apply to transactions covered by I.R.C. § 1041. However,

as correctly pointed out by the defendant, section 1.1274–1(b)(iii) applies only to debt instruments issued after April 4, 1994.

T.C.Memo.1987–418. Second, even assuming that section 483 is sufficiently similar to section 1274 so that the cases cited by plaintiff are on point,[7] the court finds the debt instruments considered in these cases to be distinguishable. Both the *Fox* and *Gammill* courts specifically noted that the agreements entered into by the spouses provided that the judgement was to be paid without interest. *Fox*, 510 F.2d at 1331; *Gammill*, 73 T.C. at 932. The *McCormick* court did not discuss whether the settlement agreement provided that no interest would be paid, but the portion of the agreement reproduced in the court's order did not provide for interest payments. *McCormick*, T.C.Memo.1987–418.

In contrast, the Redemption Agreement in the instant case contemplates imputed interest as calculated under section 1274. The Redemption Agreement requires the Corporation to issue a Note to plaintiff in exchange for the shares. Redemption Agreement ¶ 2. The Redemption Agreement also states that the parties agreed that payments under the Note are without stated interest, but the Corporation agreed to timely prepare and deliver to plaintiff for each calendar year an IRS Form 1099–INT to report to the plaintiff the appropriate interest portion of the payments made under the Note to the plaintiff as determined by the applicable regulations promulgated pursuant to section 1274 of the Internal Revenue Code. *Id.* Plaintiff initialed the Redemption Agreement on each page. *Id.* at 2, 3. In addition, the Note and the Settlement Agreement stated that either the Corporation or Mr. Craven could prepay any payment due under the Note. The Note made it clear that prepayment meant that the Corporation could prepay the present value of the Note at an annual discount rate of 7.5%. Thus, unlike

the transactions in *Fox* and *Gammill*, plaintiff was not guaranteed scheduled payments totaling a certain amount.

The Supreme Court has "observed repeatedly that, while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice and may not enjoy the benefit of some other route he might have chosen to follow but did not." C. I. R. *v. National Alfalfa Dehydrating & Milling Corp.*, 417 U.S. 134, 147, 94 S.Ct. 2129, 40 L.Ed.2d 717 (1974) (citations omitted). The language in the Redemption Agreement put plaintiff and her attorneys on notice that although the Note did not contain a stated interest, imputed interest as defined in section 1274 was contemplated. In addition, the prepayment option alerted plaintiff and her attorneys that the transaction was unlike an ordinary property settlement that receives non-recognition status under section 1041.

Plaintiff argues that she acquiesced in the Settlement Agreement because of the financial, emotional, and psychological duress exerted upon her by Mr. Craven. Pl.Resp. at 18, 25; *see Bradley*, 730 F.2d 718; *Spector v. Commissioner*, 641 F.2d 376, 381 (5th Cir. Unit A 1981); *McCormick*, T.C.Memo.1987–418. Plaintiff contends that based on her unequal bargaining position, the court should disregard the clear language in the Redemption Agreement contemplating that interest would be imputed on the Note under section 1274.

Several courts, including the Eleventh Circuit, have held that when a taxpayer attempts to disregard the form of a transaction for the substance to gain a tax advantage, she must show that the agreement was a result of fraud, duress, or undue influence. *Bradley*, 730 F.2d at

---

7. Plaintiff does not address the similarities between sections 483 and 1274. However, it appears that the two sections are companion provisions, which test the adequacy of interest charged on debt instruments issued in connection with the sale or exchange of nonpublicly traded property. *See* Jacob Mertens, Jr.,

The Law of Federal Income Taxation § 12C.35 (1997). Section 1274 governs debt instruments issued in connection with the sale or exchange or property, and section 483 applies to transactions that are excepted from section 1274. *Id.*

720; *Spector*, 641 F.2d at 382 (relying on *Commissioner v. Danielson*, 378 F.2d 771, 775 (3d Cir.1967)). Common law principles define the heavy burden of showing fraud, duress, or undue influence. *Danielson*, 378 F.2d at 778. One court has applied this test to a challenge to the tax consequences of a settlement agreement pursuant to a divorce. *Schatten v. United States*, 746 F.2d 319, 321 (6th Cir.1984).

"Duress which will avoid a contract must consist of threats of bodily or other harm, or other means amounting to coercion, or tending to coerce the will of another, and actually inducing him to do an act contrary to his free will." *Tidwell v. Critz*, 248 Ga. 201, 203, 282 S.E.2d 104 (1981). A showing of economic distress as a factor in entering a contract is not enough to support legal duress. *Hovendick v. Presidential Financial Corp.*, 230 Ga.App. 502, 505, 497 S.E.2d 269 (1998).

In *Schatten*, 746 F.2d at 321, the Sixth Circuit applied the *Danielson* test and refused to alter the form of a settlement agreement because of duress. The taxpayer contended that she was represented by a lawyer recommended by her husband, she was physically ill during her divorce, she was seeing a psychiatrist at the time, and her ex-husband had been threatening their children's futures.

In the instant case, plaintiff asserts that she was facing financial difficulties during the divorce proceedings despite the fact that she obtained a temporary support decree in the amount of $2500 per month. K. Craven Aff. ¶¶ 13, 14, 16, 17, 18, 20, 21. In addition, she was seeing a counselor for the emotional distress caused by the ending of her marriage. *Id.* ¶ 11. She felt distressed at her husband's open extramarital affairs and was put under further stress by the questions her husband's attorneys asked about their sexual life. *Id.*

¶ 23–25. Throughout the litigation, plaintiff received advice from at least three attorneys, including her brother. I.B. Brownlow Aff. ¶ 13.

In construing the facts in the light most favorable to the plaintiff, the court finds that plaintiff has failed to show that her Settlement Agreement should be set aside on grounds of duress.[8] Divorces that may be based in part on allegations of extramarital affairs are often emotionally charged and require inquiry in the private lives of the parties. Plaintiff was financially able to hire her own attorneys to negotiate the Settlement Agreement. Indeed, her attorneys expressed concern regarding the Form 1099 provision and obtained an opinion from a business professor, Dr. John Andrews. I.B. Brownlow Aff. ¶ 13. Based on the advice of her attorneys, plaintiff entered into the Settlement Agreement. The fact that Mr. Craven may have had more funds at that time to hire attorneys is irrelevant.

In *McCormick*, T.C.Memo.1987–418, the court considered whether payments made by a husband to his ex-wife constituted support payments or part of a property settlement. Although the court considered the labels that the parties used in the settlement agreement, the court further held that the "weight to be given to the labels must be reduced when, as here, the parties are negotiating from unequal bargaining positions." *Id.* The court then looked at the structure of the payments and determined that the payments were a part of a property settlement. *Id.*

The court declines to follow *McCormick*'s "unequal bargaining position" language to the extent that *McCormick* is inconsistent with this Circuit's test to vitiate a contract as outlined in *Bradley*, 730 F.2d at 718, and *Spector*, 641 F.2d at 381. Moreover, *McCormick* is distinguishable. In *McCormick*, the court disregarded the

---

8. The court notes that if plaintiff was dissatisfied with the structure of the Redemption Agreement, she could have brought an action to set aside the divorce decree on grounds of duress or set aside the Settlement Agreement as procured by fraud, duress, or mistake.

*Cronic v. Cronic*, 238 Ga. 600, 234 S.E.2d 515 (1977); *Thompson v. Thompson*, 237 Ga. 509, 228 S.E.2d 886 (1976). Plaintiff has waited until now to assert that this court should disregard the form of her transaction because of the duress she faced.

labels that the parties used in the settlement agreement and instead looked at the structure and substance of the transaction. In the case sub judice, plaintiff requests this court to restructure the debt obligation from one with imputed interest to one without interest.

Accordingly, the court finds that no genuine issue of material fact exists as to whether plaintiff is liable for interest income from the Note in the years 1992, 1993, and 1994. However, plaintiff has submitted an affidavit of Dean R. Nelson who opines that the Internal Revenue Service made several errors in the computation of imputed interest income. Nelson Aff. ¶ 5. Although Mr. Nelson gives his opinion on the errors committed by the Internal Revenue Service, Mr. Nelson does not give an opinion on what the taxable interest should be. The court finds that a genuine issue of material fact exists as to the amount of taxes owed by plaintiff for interest income from the Note.

## CONCLUSION

Defendant's motion for summary judgment [14–1] is GRANTED IN PART and DENIED IN PART. Plaintiff's motion for summary judgment [17–1] is GRANTED IN PART and DENIED IN PART. Defendant's motion is denied and plaintiff's motion is granted with respect to whether plaintiff is liable for taxes for her redemption of stock. Defendant's motion is granted and plaintiff's motion is denied with respect to whether plaintiff is liable for taxes on her imputed interest income on the Note. The remaining issue in this case is the amount of taxes due for the imputed interest income in the years 1992, 1993, and 1994. The clerk is directed to schedule a conference in regard to the remaining issue.

## ORDER

This case is before the court for consideration of the plaintiff's motion for reconsideration of the court's order of February 18, 1999 [30–1]. Plaintiff requests that this court modify its earlier order to hold that Internal Revenue Code ("IRC")

§ 1274 does not apply to divorce property settlements protected by IRC § 1041. For policy reasons and based on this court's determination that the transaction is subject to § 1041, the United States does not oppose plaintiff's motion for reconsideration. Subsequently, the parties stipulated to a final judgment in the amount of $416,362.42, and the court entered final judgment in favor of the plaintiff and against the defendant on June 10, 1999.

In view of the government's acquiescence, plaintiff's motion for reconsideration is GRANTED. That portion of the order of February 19, 1999 considering whether plaintiff incurred taxes based on the imputed interest on a promissory note executed by Mr. Billy Joe Craven (the "Note") is hereby set aside and deleted. Because the court has entered final judgment, the matter is now concluded.